STATE, EX REL. NIECE, *v.* SOALE, ADMINISTRA-
TOR, ET AL.

[No. 5,413. Filed June 27, 1905.]

1.  INTOXICATING LIQUORS.—*Statutes.*—*Sales to Intoxicated Persons.*—*Liability.*—*Bonds.*—Under §7288 Burns 1901, §5323 R. S. 1881, a saloon-keeper is liable personally and upon his bond, for injuries to the person, property or means of support of anyone, by reason of his sales of liquor to an intoxicated person. p. 75.

2.  INTOXICATING LIQUORS.—*Bonds.*—*Death of Principal.*—The death of the principal on a bond given under §7279 Burns 1901, §5315 R. S. 1881, does not relieve the sureties thereon. p. 76.

3.  SAME.—*Bonds.*—*Sales to Intoxicated Persons.*—An action *ex delicto* as well as upon his bond may be maintained against a saloon-keeper for the sales of intoxicating liquor to an intoxicated person. p. 76.

4.  SAME.—*Damages.*—*"Means of Support."*—The killing of an infant's father is a deprivation of such infant of its "means of support," within §7288 Burns 1901, §5323 R. S. 1881, creating a cause of action for unlawful sales of liquor in certain cases. p. 77.

5.  INFANTS. — *When Personal Rights Attach.* — The personal rights of an infant do not attach until birth. p. 79.

6.  SAME. — *Posthumous.* — *Damages.* — *Intoxicating Liquors.* — *Bonds.*—*Loss of Support.*—A child, *en ventre sa mere* at the time of its father's death caused by the unlawful sale of intoxicating liquors by a saloon-keeper, can, after its birth, maintain an action on such saloon-keeper's bond for damages for loss of its means of support. p. 79.

From Vigo Circuit Court; *James E. Piety,* Judge.

Action by the State of Indiana, on the relation of Wesley S. Niece, against Wilson H. Soale as administrator of the estate of Charles L. Markin, deceased, and others. From a judgment for defendants, plaintiff appeals. *Reversed.*

*Foley & Royse,* for appellant.

*Wilson H. Soale,* for appellees.

COMSTOCK, J.—This action was brought by relator under §7288 Burns 1901, §5323 R. S. 1881, on a liquor dealer's bond executed under §7279 Burns 1901, §5315 R. S. 1881, against the principal and sureties on said bond, to recover for the damage to himself, alleged to have been caused by the principal by the sale of liquor to one Carrington, and relator's father, while they were both intoxicated, whereby it is alleged relator's father was killed and relator injured in his means of support. The amended complaint shows that after the commencement of the suit Charles L. Markin, the principal on the bond, died, and his administrator was substituted as defendant. The bond is made part of the complaint by exhibit. A demurrer was sus-

tained to said amended complaint, and, relator refusing to plead further, judgment was rendered on the demurrer in favor of appellees for cost.

Upon this ruling of the court the relator asks that the judgment be reversed.

The complaint alleges that Charles L. Markin sold intoxicating liquor to one Carrington while both Niece, relator's father, and Carrington were intoxicated, and

1. that on account of said intoxication said Niece and Carrington quarrelled, and Carrington shot and killed Niece; that said relator, Wesley S. Niece, was born two months after the death of his father, and was dependent upon his said father for support; that his said father was able-bodied, in good health and capable of earning a living for the relator.

The bond was in the form required by §7279, *supra,* and provided that Markin should keep an orderly and peaceable house, pay all fines and costs that might be assessed against him for any violations of the provisions of this act, and pay all judgments of civil damages growing out of unlawful sales that may be assessed against him.

Section twenty of "An act to regulate and license the sale of spirituous, vinous and malt and other intoxicating liquors," etc., approved March 17, 1875 (Acts 1875 [s. s.], p. 55, §7288 Burns 1901, §5323 R. S. 1881), is as·follows: "Every person who shall sell, barter, or give away any intoxicating liquors, in violation of any of the provisions of this act, shall be personally liable, and also liable on his bond filed in the auditor's office, as required by section four of this act, to any person who shall sustain any injury or damage to his person or property or means of support on account of the use of such intoxicating liquors, so sold as aforesaid, to be enforced by appropriate action in any court of competent jurisdiction." · Section fifteen of said act (Acts 1875 [s. s.], p. 55) is in these words: "Any person who shall sell, barter, or give away any spirituous,

vinous or malt liquors to any person at the time in a state of intoxication, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than $10 nor more than $50."

It was held by the Supreme Court in *Mulcahey v. Givens* (1888), 115 Ind. 286, 288, that section twenty is to be construed as if it read: "Every person who shall [sell,] barter or give away any spirituous, vinous or malt liquors · to any person at the time in a state of intoxication, shall be personally liable, and also liable on his bond * * * to any person who shall sustain any injury or damage to his person or property, or means of support, on account of the use of such intoxicating liquors." Continuing the court said: "As thus construed, the right to prosecute a civil action under that section for the sale of alcoholic liquors to a person in a state of intoxication was neither abridged nor taken away by the subsequent enactment of §2092 R. S. 1881 [§2188 Burns 1901]." So that §7288, *supra,* gives a remedy against the saloon-keeper personally and against the saloon-keeper and his sureties on his official bond, and the remedies are distinct, and the person has his choice between them. *Wall v. State, ex rel.* (1894), 10 Ind. App. 530; *Brandt v. State, ex rel.* (1897), 17 Ind. App. 311.

2. The liability of the principal and sureties on the bond given under the provisions of §7279, *supra,* is not destroyed by the death of the principal. *Moriarty v. Bartlett* (1884), 34 Hun 272.

3. The act alleged to have caused the breach of the contract is an act for which the wrongdoer may also be liable *ex delicto*. In *Homire v. Halfman* (1901), 156 Ind. 470, in which numerous cases are collected upon the various questions arising upon the statute under consideration, the Supreme Court held that where a saloon-keeper sold intoxicating liquors to a person who was at the time intoxicated, in consequence of which sale the latter became so crazed that he committed murder, and was sent

to the penitentiary, the wife of the intoxicated person may maintain an action against the saloon-keeper, under sections fifteen and twenty of the act of 1875, *supra,* for the loss of means of support.

That an infant is deprived of its means of support by the wrongful killing of its father must be conceded.

4. *Wall* v. *State, ex rel., supra; Brandt* v. *State, ex rel., supra.*

It follows that it only remains to determine whether an infant born two months after the death of its father is injured by such wrongful killing. In support of the proposition that the beneficiary in the case at bar can not maintain an action for injury received by him before birth appellee cites *Allaire* v. *St. Luke's Hospital* (1900), 184 Ill. 359, 56 N. E. 638, 48 L. R. A. 225, 75 Am. St. 176; *Dietrich* v. *Inhabitants of Northampton* (1884), 138 Mass. 14, 52 Am. Rep. 242; *Gorman* v. *Budlong* (1901), 23 R. I. 169, 49 Atl. 704, 55 L. R. A. 118, 91 Am. St. 629.

In *Allaire* v. *St. Luke's Hospital, supra,* the mother of the infant and the unborn infant were injured by an elevator in a hospital in which the mother was a patient. Ten days before the time for the natural birth of the plaintiff, the mother became a patient. The court held that at the time of the alleged injury the plaintiff was a part of his mother, and that an action could not be maintained. The court refers to *Dietrich* v. *Inhabitants of Northampton, supra.* In that case the mother was advanced four or five months in pregnancy, and slipped and fell by reason of a defect in the highway, the consequence of which was a miscarriage. Plaintiff was alive when delivered, but was too little advanced in foetal life to survive. Action was brought by administrator of deceased infant under the statute authorizing an action for the benefit of the mother or next of kin. The trial and supreme courts both held that the action could not be maintained, the latter saying: "Taking all of the foregoing considerations into account,

and further, that, as the unborn child was a part of the
mother at the time of the injury, any damage to it which
was not too remote to be recovered for at all was recoverable
by her, we think it clear that the statute sued upon does not
embrace the plaintiff's intestate within its meaning." The
same case refers to *Walker* v. *Great Northern R. Co.*
(1891), 28 L. R. Ir. 69. In the case last named, Annie
Walker, mother of the plaintiff, became a passenger on
defendant's railway, and was so received by defendant, and
defendant so carelessly and negligently conducted itself in
carrying said Annie Walker and in managing its railway
that plaintiff was thereby injured, crippled and deformed.
A demurrer was sustained to the statement of claim, all the
judges concurring in the opinion that it was defective in
not showing a contractual relation between the plaintiff and
the railroad company, but merely averring a contract be-
tween the mother of the plaintiff and the company. The
question, however, whether such an action could be main-
tained by an infant who, at the time of the alleged
injury, was in its mother's womb, was discussed elab-
orately by both court and counsel. Harrison, J., while
basing his decision on the insufficiency of the state of the
claim, says in his opinion: "When the accident occurred
on the 12th of June the plaintiff was still unborn, and had
no existence apart from her mother, who was the only per-
son whom the defendants contracted to carry." Johnson, J.,
in his opinion, says: "As matter of fact, when the act of
negligence occurred the plaintiff was not *in esse,* was not a
person, or a passenger, or a human being. Her age and her
existence are reckoned from her birth, and no precedent has
been found for this action." To the same effect is *Gorman*
v. *Budlong, supra.* This case cites and quotes from *Allaire*
v. *St. Luke's Hospital, supra,* and *Walker* v. *Great North-
ern R. Co., supra.*

The foregoing cases rely upon the personal rights and
personal injuries of an unborn infant. Personal rights of

State, *ex rel.*, v. Soale—36 Ind. App. 73.

an infant do not occur until birth. Up to that time, personal rights of an infant are not distinguishable from those of the mother. In each of them the property rights of the infant are recognized. Under the common law, property rights of the infant relate to the time of conception. "Lord Hardwicke, discussing the same question, held that a child in the mother's womb is a person in *rerum natura,* and that by the rules of the civil and common laws 'she (the child) was to all intents and purposes a child as if born in her father's lifetime.' Speaking of the civil law, which limits the operation of this rule to cases where it is for the benefit of the child to be considered as born, he says it is to be considered as living for all purposes." *Nelson* v. *Galveston, etc., R. Co.* (1890), 78 Tex. 621, 14 S. W. 1021, 11 L. R. A. 391, 22 Am. St. 81; *Harper* v. *Archer* (1845), 4 Sm. & Mar. 99, 43 Am. Dec. 472, and numerous cases cited in the foot-notes; *Commonwealth* v. *Parker* (1845), 9 Met. 263, 43 Am. Dec. 396; *In re Winne* (1869), 1 Lans. 508; *Marsellis* v. *Thalhimer* (1830), 2 Paige 35, 21 Am. Dec. 66; 1 Blackstone's Comm., 130.

An infant may recover for the loss of support caused by the wrongful killing of its father by another, although the infant was *en ventre sa mere* at the time the wrongful killing occurred. It is said in 1 Shearman & Redfield, Negligence (5th ed.), §133: "When the right of action is given to a child, a child *en ventre sa mere* can sue;" citing *Texas, etc., R. Co.* v. *Robertson* (1891), 82 Tex. 657, 17 S. W. 1041, 27 Am. St. 929, and *Nelson* v. *Galveston, etc., R. Co., supra.*

In *Nelson* v. *Galveston, etc., R. Co., supra,* the statute of Texas is set out as follows: "The action shall be for the sole and exclusive benefit of the surviving  *  *  *  children  *  *  *  of the person whose death shall have been so caused," etc. The court held that the word children used in the statute includes a posthumous child. Such child is

entitled to share equally with other children of the deceased in the benefit of such action. *The George & Richard* (1871), L. R. 3 A. & E. 466; *Blake* v. *Midland R. Co.* (1852), 18 Q. B. (83 E. C. L.) 93; *Quinlen* v. *Welch* (1893), 69 Hun 584, 23 N. Y. Supp. 963.

The language of the statute (§7288 Burns 1901, §5323 R. S. 1881) makes every person who sells intoxicating liquor in violation of the act personally liable and also liable on his bond to any person who shall sustain any injury or damage to his person or property or means of support on account of the use of such intoxicating liquors. The case of *Quinlen* v. *Welch, supra,* was brought under a statute very similar to ours. The court says: "Our attention has been called to no case in which the civil damage act has become the subject of judicial construction as to this question. The statute gives to a child the right of action for an injury to its means of support. A child during the years of its infancy before arriving at an age that it can care for and maintain itself is entitled to receive support from the parent, and if deprived of such parent, suffers damage in its means of support. An unborn child, if subsequently born alive, if deprived of a parent suffers in its means of support equally with the children that were living at the time of the decease of such parent. Such a child, as we have seen, is regarded as in being and is placed upon an even footing with the living children in reference to the distribution of the estate of a deceased parent; and no reason is apparent why the same rights should not be extended to such a child under the act in question." By the weight of the decisions no distinction between the rights of a posthumous child and one born during the lifetime of the parent should be made. This is the doctrine of the celebrated case of *Thellusson* v. *Woodford* (1799), 4 Ves. *227, 11 Ves. 112.

Judgment reversed, with instructions to overrule the demurrer to appellant's complaint.