## TUTTLE v. SHORT
(No. 1601; May 27, 1930; 288 Pac. 524)

4

6

For the respondent there was a brief and oral argument by *C. W. Axtell* and *Lin I. Noble,* of Thermopolis, Wyoming.

RINER, Justice.

This case is before the court by direct appeal from a judgment rendered by the District Court of Hot Springs County in favor of the plaintiff and respondent F. F. Tuttle, Administrator of the Estate of Calvin P. Stephens, deceased. For convenience this party will be hereinafter generally designated as the "plaintiff", and the defendants and appellants, George B. Short, as Administrator of the Estate of Frank B. McFarlane, deceased, and Massachusetts Bonding and Insurance Company, a corporation, will be referred to respectively either as the "sheriff's administrator" and the "surety", or in general terms as the "defendants."

This is another action growing out of the unfortunate automobile accident which took place in Hot Springs County, Wyoming on the 23rd day of August, 1927, wherein two of its officers, Sheriff McFarlane and Undersheriff Ed Goodfellow, and one Calvin P. Stephens—who was at the time in their official custody—all lost their lives. Vaughn Stephens, a son of the man last mentioned, being in the car and likewise under arrest by the officers, was at that time also seriously injured. The record in his lawsuit against the defendants herein has been heretofore reviewed and disposed of in this court as case No. 1585, Stephens v. Short, et al., (Wyo.) 285 Pac. 797.

The present litigation was instituted against the defendants by the plaintiff upon a petition summarized as follows:

Paragraphs 1 to 11 inclusive set out the representative character of the plaintiff and defendant administrators respectively, the corporate existence and authority to do business in Wyoming of the surety, the official character of McFarlane as Sheriff and Goodfellow as Undersheriff, the execution by McFarlane and the surety of his official bond in the sum of $4,000 with certain conditions required by law (Sec. 1459, W. C. S. 1920), one of which was that

he faithfully perform the legal duties of sheriff, and the due approval of said bond. A copy of this instrument is attached to and made a part of the pleading as an exhibit and appears in form joint and several. These paragraphs also allege the issuance of criminal process against Calvin P. Stephens for his arrest by the officers, exhibiting attached copies of such process, and the journey of such officers in an automobile to an oil field in Hot Springs county where the said Calvin P. Stephens was employed. Paragraphs 12 and 13 allege Stephens' arrest under color of their office by McFarlane and Goodfellow and his being ordered by them to take his place in the back seat of the car operated by said officers and the commencement of their return trip to the town of Thermopolis. Paragraphs 14, 15 and 16 charge the negligent operation of the automobile by the sheriff and undersheriff in such a way that "notwithstanding that the said sheriff and undersheriff were required to exercise ordinary and reasonable care for the safety and protection of the *plaintiff*," it was precipitated over the embankment and into a deep ravine, in consequence of which McFarlane, Goodfellow and plaintiff's intestate were killed. Paragraph 17 of the pleading reads, verbatim: "That by reason of the negligent and careless acts of the sheriff and undersheriff as above mentioned and set forth and said car being driven off and over said embankment as aforesaid and by reason of the injuries received by this plaintiff as a result of the negligence of the said sheriff and undersheriff as aforesaid, this plaintiff has suffered damages in the sum of Ten Thousand Three Hundred Dollars ($10,300.00), which amount plaintiff claims, together with interest on said sums at the rate of seven percent (7%) per annum from the 20th day of April, 1928, no part of which has been paid." The 18th paragraph avers that plaintiff presented his claim to the sheriff's administrator for allowance in the sum of $10,300, copy of which claim is attached and made a part of the

petition, said claim being disallowed by said administrator. The language of this claim, as shown by the copy attached to the pleading, is as follows:.

"Estate of Frank B. McFarlane, Deceased
To F. F. Tuttle, Administrator of the estate of
Calvin Stephens, deceased, Dr.
1927    Items  $
August 23, 1927 For damages by reason of injuries resulting in the death of Calvin Stephens, deceased, due to the negligent driving of an automobile by said Frank B. McFarlane, deceased, and Ed. Goodfellow, his deputy sheriff, while said Frank B. McFarlane was sheriff of Hot Springs County, Wyoming, and while said Calvin Stephens, deceased, was in his charge as a prisoner and under arrest for the commission of a crime ------------------------------------$10,300.00"

Judgment is prayed against the defendants in the sum last above mentioned.

Defendants' answer admitted the allegations contained in the first eleven paragraphs and denied those embraced in paragraphs 12 and 13 of plaintiff's petition. Concerning paragraphs 14, 15, 16 and 17 the answer admits that the car was precipitated into the ravine and all the named persons killed; the remaining allegations of these portions of the pleading are denied. The averments of paragraph 18 are admitted. There was a reply filed to the answer in form a general denial, except as to allegations admitted by the petition.

The case was tried to the court without a jury and defendants, at the commencement of the proceeding, objected to the introduction of any evidence by the plaintiff on the ground that the petition upon which the cause was

being tried did not state a cause of action against said defendants either jointly or severally. This objection was overruled and exception allowed. By stipulation the transcript of the evidence in the Vaughn Stephens action, mentioned above, was offered by the plaintiff and received in evidence over the aforesaid objection on the part of the defendants. The facts thus shown were, accordingly, as detailed in the opinion filed in No. 1585, Stephens v. Short, supra, and it will be unnecessary again to recite them here. In addition there was proof submitted that plaintiff's intestate lived about two hours after the accident in which the others were killed, but died before this action was commenced; it was further proven that he was receiving $150 a month as wages and was 58 years old at the time of his death. Plaintiff offered in evidence also the American table of mortality and then rested his case. The defendants introduced no evidence but rested their case immediately, and thereupon moved jointly and severally for findings by the court in their favor, both upon the same ground interposed by them to the introduction of evidence by the plaintiff as above set forth, and also on the additional ground that there was no sufficient evidence to warrant findings in favor of the plaintiff, as well as a complete failure, so far as the evidence was concerned, to establish a cause of action against the defendants either jointly or severally. This motion was by the court overruled and the defendants were given an exception. Judgment was then entered in plaintiff's favor against the defendants for the sum of $4,000 and costs.

The rulings of the trial court, mentioned in the preceding paragraph, have been assigned as error by the defendants upon their appeal from this judgment and we are thus brought directly to the question whether the plaintiff's petition states facts sufficient to constitute a cause of action. For that party it is said at the outset that the action is one upon contract, while the defendants insist that it is one purely in tort for negligence. From the out-

line heretofore given of the pleading, it is quite evident that it is, to say the least, rather equivocal in character, possessing allegations and structure which might lead to its being construed either way. 1 C. J. 1015 declares that: "If the complaint is equivocal and it is not clear to which class the action belongs, it will ordinarily be construed as in contract, rather than in tort." While in Washbon v. Linscott State Bank, 87 Kan. 698, 125 Pac. 17, 20, the court, in discussing the point says that: "It is well settled that if any doubt exists as to the nature of the action, the courts are inclined toward holding it an action in contract." Expressions opposed to these statements of law may be found in the reports and it may be there are proper exceptions to this rule, but in the present case, inasmuch as the bond of the sheriff has been pleaded, and inferentially, though not clearly, a breach of duty thereunder, the surety on the obligation having been made a party to the action, we shall adopt the view that plaintiff has endeavored to state a cause of action *ex contractu.* Obviously the surety could have no connection with the assertion of a purely tortious liability.

Section 1459, W. C. S. 1920, requires of a duly elected sheriff that he "shall before he enters on the duties of his office, execute a bond to the people of the state of Wyoming, with sufficient sureties, in the penal sum of four thousand dollars, to be approved by the county commissioners, conditioned for the faithful performance of the duties of sheriff as required by law." The bond must also contain other conditions not material here. The first clause of Section 5580, W. C. S. 1920, directs that:

"An action must be prosecuted in the name of the real party in interest, except as provided in the next two following sections."

Section 5581, following, provides in part:

"The rule prescribed in the preceding section may be so applied, when a person forfeits his bond or renders his sureties liable, that any person injured thereby, or who is by law entitled to the benefit of his security, may bring an action thereon, in his own name, against the person and his sureties, to recover the amount to which he is entitled by reason of the delinquency, which action may be prosecuted on a certified copy of the bond."

The section from which the last quotation was made was first placed in the body of our law by the Session Laws of 1886, Chapter 60, Section 47, being borrowed from the legislation of the state of Ohio. It may be here noted that while Section 5581 reads as above quoted—"entitled to the benefit of *his* security"—in the law originally passed and as it appears in all subsequent compilations of the statutes except that of 1920, the word "his" appears as "this". It would seem that the change is a typographical error.

Under these statutes this court has held that the person injured could bring an action upon a sheriff's bond in his own name. However, the question here presented through the errors assigned by the defendants and argued by them is whether the administrator of a person under arrest, whose death has been caused by the alleged negligence of the sheriff committed in the course of the performance of his official duty, has a cause of action therefor against the personal representative of the latter and the surety upon his official bond, it appearing that the sheriff himself was killed in consequence of the alleged negligence and that he died before his prisoner did and before any action seeking a recovery was commenced. In considering this question it becomes necessary to refer to certain other statutes of this state which furnish us with the rule as to what causes of action survive in a matter of this kind. These enactments are: Section 5559, W. C. S. 1920, which provides:

"In addition to the causes of action which survive at common law, causes of action for mesne profits or for an injury to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

Section 5560, W. C. S. 1920, reads:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, nothwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter."

And Section 5561, W. C. S. 1920, which directs that:

"Every such action shall be brought by, and in the name of, the personal representative of such deceased person; and the amount received in every such action shall be distributed to the parties and in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate. In every such case, the jury shall give such damages as they shall deem fair and just, and the amount so recovered shall not be subject to any debts or liabilities of the deceased, provided, that every such action shall be commenced within two years after the death of such deceased person."

Section 4547, W. C. S. 1920, declares generally that:

"The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, * * * shall be the rule of decision in this state when not inconsistent with the laws thereof, and shall be considered as of full force, until repealed by legislative authority."

Under these statutes it is reasonably clear that the common law rule relative to the survival of a right of action for damages to the person must govern. That rule was usually expressed in the maxim: *"Actio personalis moritur cum persona."* But, as pointed out in 1 R. C. L. 29, Sec. 23:

"Standing alone, the rule or maxim *actio personalis moritur cum persona,* is inaccurate, for the term 'personal action,' in its largest sense, includes all actions except those for the recovery of real estate, and would embrace actions of debt and assumpsit for the money counts, which were never supposed to die with the person. A more restricted meaning must, therefore, be given to the rule or maxim stated above, and it is this: if any injury is done either to the person or property of another, for which damages only may be recovered in satisfaction, the action dies with the person to whom or by whom the wrong has been done."

See also 1 C. J. 184, Sec. 339, and extended list of cases cited. And the same text (1 C. J. 195, Sec. 363) also says:

"At common law a cause of action for injuries to the person of another, whether by assault and battery, false imprisonment, or other wrongful act, or by negligence, did not survive the death of either the person who inflicted or caused the injury or the person injured; and this is still the settled rule in all jurisdictions except in so far as it has been abrogated or modified by statutory provision."

See also the authorities subsequently reviewed herein.

Section 5559, supra, was also borrowed from the early legislation of Ohio—legislation which has since been modified. It was there known as Section 398 of the Ohio Civil Code, and in the case of Russell, Administrator v. Sunbury, Administrator, 37 Ohio St. 372, where this law was under consideration and where the sole question in the case was whether an action for death by wrongful act

could be maintained against the administrator of the wrongdoer, the court remarks:

"The clause 'or for an injury to the real and personal estate,' found in Section 398, and in the act of 1831, is borrowed from the classification known to the common law, to distinguish such injuries and rights of action from those to the *personal* or *real estate*.

"We find the same terms in the act of 3 & 4 W. 4, ch. 42. By that act injuries to the personal or real estate, survive against the representative of the defendant. It recites the fact that there is no remedy for injuries to real estate of a deceased person committed in his lifetime, to another, in respect to his property, *real* or *personal,* and among other things provides for an action against the personal representative of a deceased wrongdoer in respect to injuries to such property. I Ch. Plead. 79.

"In using this phrase 'injury to the real or personal estate,' the legislature is presumed to have used it in its well established sense, as distinguishing torts to property from injuries to person.

"We conclude therefore, that Section 398 of the code does not prevent the abatement of a right of action for damages to the person."

And the same court, in Wolf v. Wall, 40 Ohio St. 111, said of this section:

" 'An injury to personal estate' under Section 398, Civil Code (S. & C. Stat., 1058), is damage done to some specific property of which the person is the owner. It is not damage arising incidentally or collaterally."

It is, we think, evident from the foregoing that a cause of action for purely personal injuries, caused by the negligence of another, does not, under our law, survive the death of the wrongdoer. The common law rule must be regarded as controlling the matter. As Lord Ellenborough rather laconically said, in Chamberlain v. Williamson, 2 M. & S. 408:

"Executors and administrators are the representatives of the temporal property, that is, the debts and goods of the deceased, but not of their wrongs, except where those wrongs operate to the temporal injury of their personal estate."

Does a different rule prevail where the negligent act causes the death of a person? In other words, is the personal representative of the deceased person given a cause of action against the personal representative of the wrongdoer? In answering this question it is necessary to examine Sections 5560 and 5561 quoted above.

It will be remembered that at common law no action would lie to recover damages for wrongfully causing the death of a human being, and that to remedy this omission, in England in 1846, the statute known as Lord Campbell's Act was passed. Since that time a like right of action has been given by the statutes of the United States and of the several states of the American Union. The two sections of our law last above mentioned are, to a large degree, patterned after that Act. Concerning its nature, Lord Coleridge, in Blake v. Midland Ry. Co., 18 Q. B. 93, 21 L. J. Q. B. 233, 16 Jur. 562, said:

"This act does not transfer this right of action to his representative but gives to his representative a totally new right of action on different principles."

And Lord Blackburn, in Seward v. The Vera Cruz, 10 App. Cas. 59, described the effect of the statute in this language:

"A totally new action is given against the person who would have been responsible to the deceased if the deceased had lived."

Under the Wyoming statutes it is plain that an action for death by wrongful act can be brought only by and in the name of the personal representative for the benefit of

those who, under the state law, would share in the distribution of the deceased's personal estate in the event he died intestate, and that the amount of the recovery does not become a part of the estate of the deceased, neither is it subject to any of his debts or liabilities.

When the text of the law is examined, it is seen—and this is true, with a few exceptions, concerning the statutes of the various states which create a new cause of action—that it does not in terms undertake either expressly or impliedly to change the common law rule which precludes the maintenance of personal injury actions against the representatives of the wrongdoer. Accordingly, as stated in 8 R. C. L. 777, Sec. 60, that rule "applies to actions for wrongful death, brought after the death of the tortfeasor, except where the rule has been modified by a statute." See also 17 C. J. 1233, Sec. 80, and cases cited. A comparatively recent compilation of the decisions adopting this view of the law may be found in a well prepared note in 61 A. L. R. 830, where it is shown that some nineteen different jurisdictions in the United States are so in accord on the point. The case of Russell, Administrator v. Sunbury, Administrator, from the state of Ohio and cited above, appears in that list.

Concluding as we do that an action for personal injuries or for causing death by wrongful act under our law as at present framed would not survive against the personal representative of the deceased tortfeasor, and approaching now the question in the case at bar, may the personal representative of a deceased person maintain an action upon a contractual obligation running to the deceased, where the damage, flowing from its breach, consists solely of the personal suffering of the latter? In the instant case is an action upon such an obligation proper to be maintained by the plaintiff against the personal representative of the person committing the wrong, because the damage resulting from its violation is the causation of

plaintiff's intestate's death by alleged wrongful act? In obtaining a correct answer to these queries, it is necessary to turn once more to Section 5581, supra, and to consider plaintiff's pleading.

The plaintiff must predicate any right he has to sue on the official bond of the deceased sheriff upon that section. Only the person injured or the person who is by law entitled to the benefit of this security may bring an action in his own name on the bond. This right is given by grace of the statute alone, as the obligation itself runs to the state of Wyoming, as obligee. Obviously the "person injured" in this case cannot sue, for he is dead. There remains but the other clause of the statute according a right to proceed on the bond and hence plaintiff must sue as one "who is by law entitled to the benefit of this security." Plaintiff's pleading in paragraph 17 embodies the language quoted verbatim above that, "by reason of the injuries received by this plaintiff as a result of the negligence of the said sheriff and undersheriff, as aforesaid, this plaintiff has suffered damages." Whether this phraseology be taken to mean, as it might seem to indicate, an assertion of injury to the estate plaintiff represents, or be regarded as a mistake on the part of the pleader, his intent being to allege damages incurred by plaintiff's intestate, in either event plaintiff's claim must be regarded as based upon whatever rights his intestate had and which survived and passed to such representative for the benefit of the estate and on nothing else. There is no proof in the case of any damages suffered by plaintiff's intestate previous to his death on account of the alleged negligence. There is not the slightest claim in plaintiff's petition that he is bringing the action for the benefit of those entitled by law to share in the distribution of any amount obtained in an action for causing death by wrongful act, and we are not inclined to think that it would alter our final conclusion in this case if such had been the fact.

Under this situation, we are necessarily brought to a consideration of whether a cause of action for personal injuries survived after the sheriff's death in favor of plaintiff's intestate by reason of the officer's negligence, as alleged in plaintiff's petition, because such negligence breached the promise inserted by law in the bond that he would take due care of his prisoner. In doing this we must lay out of view all cases where statutes have intervened to alter the rules of the common law as described above.

In 1 C. J. 182, 183, Sec. 332, we find the following language:

"It has been said that the rule that causes of action *ex contractu* survive has never been understood to apply to cases in which the damage consists entirely in the personal suffering of the deceased, or in a personal wrong done by or to him, and therefore it has repeatedly been held, in the absence of a statute, that a cause of action founded on an express or implied contract with a person does not survive to personal representatives, where the damages consist entirely in the mental and bodily suffering of the deceased."

The same text declares this to be the general rule (1 C. J. 196, 197, Sec. 366).

1 R. C. L. 28, Sec. 22, says that:

"The rule of the common law that personal actions die with the person *(actio personalis moritur cum persona)* was not originally applied to causes of action arising out of the breach of a contract. These were parcel of the personal estate in respect to which the executor or administrator represents the person of the deceased, and is in law his assignee, and it made no difference whether the contract was express or implied. But while as seen above the maxim of the common law, *actio personalis moritur cum persona,* was not originally applied to causes of action arising out of a breach of contract, at a later time the rule as to causes of action arising out of a breach of a contract was qualified, and it is now well settled that a cause of

action arising out of a contract, express or implied, will not survive where the damages sustained by such breach are personal in nature, and do not affect property rights or interests, as pain of body, anguish of mind, injury to character, or deprivation of liberty, but will survive where the damages sustained by the breach are not personal in their nature."

In Vittum v. Gilman, Administrator, 48 N. H. 416, it was held that a cause of action arising because of the breach by defendant's intestate of his undertaking as a physician, to exercise due skill and diligence in the cure of the plaintiff who was suffering from a broken leg, would not survive against the administrator. In the course of an opinion carefully reviewing the authorities, it is said:

"The great question in the case is whether this cause of action did by law survive against the administrator; and this must be governed by the rules of the common law, which in respect to causes of action of this sort has not been changed by our statute; see Comp. Stats, Ch. 198, Sec. 14, and Gen. Stats., Ch. 207, Sec. 11.

"It is generally true that a cause of action arising *ex contractu* survives against the executor; and it is also generally true that a cause of action arising *ex delicto* dies with the wrongdoer. In both cases there are well established exceptions. In respect to the latter, if the offender acquires no gain to himself at the expense of the sufferer, as by beating or imprisoning a man, or by slander, the cause of action does not survive; but if by the wrong, property is acquired by the wrongdoer whereby his estate is benefited, an action in some form will lie against the executor to recover the value of the property; as if the testator had converted the property wrongfully taken into money; or the property came in specie into the hands of the executor; 1 Ch. Pl. 90; Hambly v. Trott, Cowp. 376; Cravath v. Plympton, Administrator, 13 Massachusetts 454; United States v. Daniel & al., Ex'rs, 6 How. 11.

"In respect to causes of action arising *ex contractu* it is laid down in 1 Ch. Pl. 19, that an executor cannot sue for the breach of a promise which impliedly occasions only a

personal suffering to the testator, and is not shown to have occasioned a special damage to his estate; and he mentions as an example the case of a breach of promise to marry, and cites Chamberlain, Administrator v. Williamson, 2 M. & S. 409, where it was held that an executor cannot maintain an action for breach of promise of marriage to the testator, when no special damage is alleged. * * *

"Indeed it has been supposed that in all cases where there was a breach of contract the action would survive, although it is *now* well settled that the cases where the breach of contract results in an injury purely personal, are exceptions to this rule; and we find no adjudged case which holds that a recovery may be had against the executor, in such cases, on account of consequential damage."

So, in Wolf v. Wall, 40 Ohio St. 111, cited above, the same conclusion was reached, the court saying:

"At common law an action for injury to the person caused by the want of skill or negligence of a surgeon, although based on contract, did not survive the death of either party."

Where the petition alleged that the defendant's testator was the owner of a hotel in St. Louis, Missouri; that plaintiff for a valuable consideration became a guest in the hotel; that for said consideration it became the duty of said owner and he agreed to furnish safe accommodations for the necessary and reasonable wants of the plaintiff; that he did not perform this duty, by reason of alleged acts of negligence on his part; and that plaintiff sustained serious bodily injuries and became permanently lame, the trial court sustained a demurrer on the ground that the pleading failed to state facts sufficient to constitute a cause of action, it appearing that the owner died before the action was begun. Upon review this ruling was affirmed, in the case of Stanley v. Bircher's Executor, 78 Mo. 245, and from the opinion we take the following language:

"At common law this action (for personal injuries) did not survive as against the executor or administrator. And we thus see that it is expressly excepted from the statute which assumes to change the common law in this respect.

"But, it is claimed by counsel for plaintiff that the action is for the breach of a contract, and that it is not an action on the case for injuries to the person. The allusions in the petition to the formal contract between the plaintiff and the proprietor of the hotel, whereby the plaintiff became a guest in the hotel, cannot change the true character of the action. In setting forth an action of trespass on the case, the pleader often finds it proper, although not absolutely necessary, to mention matters of contract connected with the tort, by way of inducement and explanation. In this case the relation of host and guest which originated in contract, explains how the defendant's testator came to owe the plaintiff a duty. That duty, however, the law imposes. It is a public duty which is not defined by the contract. The action in truth is for a violation of the duty which the law imposes, independent of contract. Neither the damages nor the scope of the action can be measured or limited by the contract."

The case of Fitzgerald v. Western Union Telegraph Co., 15 Tex. Civ. App. 143, 40 S. W. 421, was an action complaining of the negligent delivery of a telegram sent by the plaintiff over defendant's telegraph line to a relative. Shortly after the action had been commenced, plaintiff died and his wife and others sought to proceed with the case. One of the main questions considered by the appellate court, in affirming a judgment for the defendant, was whether the alleged cause of action abated upon the death of the original plaintiff. In disposing of this question, the court said:

"This suit is one for the recovery of damages for personal suffering of the original plaintiff, caused, as alleged, by the negligence of the defendant company in failing to deliver within a reasonable time a telegram sent by plaintiff from Hallettsville, over defendant's line, to his brother, at Cuero. We think it clear that the common law maxim *'Actio personalis moritur cum persona,'* is ap-

plicable to this suit. At common law, causes of action founded in tort do not survive, as a general rule, to the representatives of the plaintiff upon his death, and such is the result as to actions founded on contract, where the contract is purely personal, or where the injury resulting from the breach of the contract consists entirely of personal suffering. Vide 7 Lawson, Rights, Rem. & Prac. Secs. 3436, 3437; Ritz v. City of Austin, 1 Tex. Civ. App. 455, 20 S. W. 1029. Whether the plaintiffs' cause of action be founded on contract or tort, it is unnecessary to decide, as, in either case, the suit, in our judgment, abated upon the death of the original plaintiff.''

In Zabriskie v. Smith, 13 N. Y. 322, 64 Am. Dec. 551, Judge Denio, discussing the right of a personal representative to maintain an action upon a contract where the damage consisted entirely of personal suffering of the deceased, took occasion to say:

''The maxim of the common law is, *actio personalis moritur cum persona*. This principle was not originally applied to causes of action arising out of the breach of a contract. These were parcel of the personal estate in respect to which the executor or administrator represents the person of the deceased, and is in law his assignee. (Raymond v. Fitch, 2 Crompt, Mees. & R., 588, 597; 1 Williams on Ex'rs, 677; Broom's Legal Maxims, 702.) But as to this class of rights of action, late cases have somewhat qualified the rule, and it is now well settled that an executor or administrator cannot maintain an action upon an express or implied promise to the deceased, where the damage consists entirely of the personal suffering of the deceased, whether mental or corporeal. Actions for the breach of a promise of marriage, for unskillfulness of medical practitioners contrary to their implied undertaking, the imprisonment of a party on account of the neglect of his attorney to perform his professional engagement, fall under this head, being considered virtually actions for injuries to the person.''

Feary v. Hamilton, 140 Ind. 45, 39 N. E. 516, was an action by the lessee against the lessor of certain premises,

on account of personal injuries, loss of time and expenses of physician incurred through the failure of lessor to keep the premises in repair, which, by special promise he had agreed to do. A judgment was rendered against the lessor in the trial court and he took the case to the appellate court of Indiana. While the litigation was pending there he died. The appellate court reversed the judgment, and on remand the lessor's executors were made defendants. A general demurrer to the amended complaint was then sustained, pursuant to the mandate of the higher tribunal and judgment given for the defendants. The cause was then removed to the Supreme Court of the state with the result that this judgment was affirmed. The main question was whether the cause of action relied upon died with the lessor, and concerning the point the court said:

"Counsel for appellant earnestly contend that this is an action upon contract; that, the decedent having contracted in his lifetime against the injuries complained of, his contract cannot be avoided by reason of his death. They admit that actions in tort die with the person of either party, but say that actions upon contract do not so die, but may be enforced against the legal representatives. Counsel do not cite any authority to sustain this broad proposition, and we have been unable to find any going to that extent. On the contrary, it is settled law that actions arising out of contract, express or implied, will not survive where the damages sustained by such breach are for injuries to the person, as mental anguish, pain of body, or injury to character. Boor v. Lowrey, 103 Ind. 468, 3 N. E. 151; Wolf v. Wall, 40 Ohio St. 111; Stebbins v. Palmer, 1 Pick. 71; Vittum v. Gilman, 48 N. H. 416; Smith v. Sherman, 4 Cush. 408; Wade v. Kalbfleisch, 58 N. Y. 282; Chase v. Fitz, 132 Mass. 359; Jenkins v. French, 58 N. H. 532; Hess v. Lowrey, 122 Ind. 225, 23 N. E. 156. It is true, as a general proposition, that actions in form *ex contractu* survive, but this is due rather to the substance of the action than its form. The nature of the damage sued for, and not the nature of its cause, determines whether or not it will survive. Cutter v. Hamlen, 147 Mass. 471, 18 N. E. 397, 1 L. R. A. 429; 1 Chit. Pl. 101. The rule is that where

the injury complained of affects primarily and principally property and property rights, and the injury to the person is merely incidental, the cause of action survives. The action must involve injury to the estate, and not to the person. Boor v. Lowrey, 103 Ind. 468, 3 N. E. 151, 53 Am. Rep. 519 and authorities cited; Hess v. Lowrey, 122 Ind. 225, 23 N. E. 156, 7 L. R. A. 90, 15 Am. St. Rep. 355. But where the action is brought primarily to recover for injury to the person, and the injury to the property is merely an incident, as loss of time while sick, and expenses incurred in endeavoring to be cured, the same does not survive. Boor v. Lowrey, 103 Ind. 468, 3 N. E. 151; Hess v. Lowrey, 122 Ind. 225, 23 N. E. 156. In such case the loss of property—that is, the loss of time and the expenses incurred in endeavoring to be cured—was caused by the personal injury, and would not have occurred but for such injury. In this case the appellant's loss of time, and inability to attend to and manage her store, and the expense incurred for the services of a physician, were all caused by the personal injury alleged, and would not have been sustained but for such personal injury. This question has been fully considered by this court in the cases of Boor v. Lowrey, 103 Ind. 468, 3 N. E. 151, 53 Am. Rep. 519, and Hess v. Lowrey, 122 Ind. 225, 23 N. E. 156, 7 L. R. A. 90, and decided against the appellant. The authorities cited by appellant were examined, distinguished, and explained in those cases; and, after a careful consideration, we see no reason to depart from the rule then stated. Under the foregoing propositions, it makes no difference in this case whether the action is on the contract or in tort; the result is the same.''

Another decision, directly in point on the matter at bar, is that of Melvin ex rel. McVey v. Evans et al., 48 Mo. App. 421. There the relator commenced his action against the defendant Evans as constable and the other defendants as sureties on his official bond. It was alleged that the relator having become intoxicated, the constable, by proper authority pleaded, arrested him, and that in doing so he, the constable, unnecessarily beat him, whereby he was injured. After the action was instituted and before the trial, the constable died. The surety defendants duly

made this suggestion to the court, and on their motion the court abated the action. The relator appealed the case. At the outset it was conceded by counsel that the action abated as to the constable. The only question presented to the appellate court for its determination was whether the cause of action survived against the sureties. In holding that it did not, the court said in part:

"But the cause of action for an assault and battery dies with the wrongdoer. It becomes extinguished, *as if it had never been.* In absence of a statute all actions arising *ex delicto* die with the person by whom or *to* whom the wrong was done. Such, for instance, as trespass, trever, assault and battery, slander, deceit, etc., where the declaration imputes a wrong to the person or the property of another, and the plea must be, not guilty. Hegerick v. Keddic, 99 N. Y. 258, 1 N. E. 787. If, however, in doing the wrong, the wrongdoer acquires property beneficial to himself or to his estate, an action survives for the value of the property. Hegerick v. Keddic, supra; Humbly v. Trott, Cowp. 371. But even under this decision there was no remedy after the death of the wrongdoer, except by force of the statute, for an injury to property not benefiting the wrongdoer.

"But the thought occurs here that the sureties ought to be held in this case from contractual considerations; that is, that they have, by their bond, contracted to make good whatever damage the constable, as such, may have caused. And that since actions *ex contractu* survive, and the action here is on the contract as evidenced by the bond, the action ought to be held to survive. But the same argument would cause the action to survive as to the principal. Besides, it is not all matters of contract which survive, nor are all actions which do not survive named in Section 97 of our statute. For instance, in absence of special damages, an action for breach of promise of marriage is based on contract, and yet does not survive. Stebbins v. Palmer, 1 Pick. 71; Lettimore v. Simmons, 13 Serg. & R. 183; Wade v. Kalbfleisch, 58 N. Y. 286. For other instances, see Hegerick v. Keddic, 99 N. Y. 258. The contract in this case is not inconsistent with or contrary to the law of abatement or survivorship of actions. The bond only obligates the sureties to respond to a legal cause

of action so long as it remains a legal cause of action; and as before stated, if the cause of action ceases to exist against the wrongdoing principal, there is nothing to which a liability on the part of the surety can attach.

"These views, while, perhaps, not established, are strengthened by this further consideration: It is a principle of law that when the surety pays the debt of the principal he may go upon the principal, or his estate, for the amount he has paid by reason of his suretyship; in other words, the estate of the principal is an indemnity for the surety. So that if we allow this action to be maintained against these sureties, they will, of course, go upon the estate of the deceased constable for the amount they may be compelled to pay, and in this manner the estate would be held for, or on account of, an action which did not exist against him.''

In view of these authorities we are obliged to conclude that the action at bar cannot be maintained against either the deceased sheriff's administrator or the surety upon his official bond. It is true the sheriff owed a duty to transport plaintiff's intestate with reasonable care for the latter's safety, when he was placed in the sheriff's car for the purpose of being brought to Thermopolis, in obedience to the command of the process in the officer's hands. That duty existed, however, as a matter of general law, separate and apart from any promise contained in the official bond. Its obligation did not create the duty—the duty already existed. So the action here is really for the violation of a duty which the law imposed, independent of the bond. The substance of the cause of action and not its form is what determines its ability to survive, as we have seen. Furthermore, as was indicated in the case last above cited, the bond in suit here only obligated the surety to answer to a legal cause of action against its principal, so long as it remained a legal cause of action. The liability arose through the alleged act of negligence of the principal alone. We have already indicated that under our law actions for personal injuries and for causing death by

wrongful act do not survive against the wrongdoer's personal representative. Not surviving as against the principal, the surety cannot be held to be answerable for them.

In reaching this conclusion we have not been unmindful of Section 6835, Wyoming Compiled Statutes 1920, one of the provisions appearing in our probate code, though it has not been called to our attention. That section provides:

"Actions for the recovery of any property, real or personal, or for the possession thereof, or for the destruction, wasting, conversion, injury, taking or carrying away thereof, or to quiet title thereto, or to determine any adverse claim thereon, and all actions founded upon contract, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates."

Phraseology resembling quite closely this statute appears in the statutory enactments of many of our western states, having been borrowed from the legislation of the state of California. Under a law resembling this, it was held, in the case of Forrester v. Southern Pacific Company, 36 Nevada 247, 134 Pac. 753, that an action for damages caused by wrongful ejection of a passenger from a train where he had paid his fare and received a ticket, was an action upon a contract which could be continued by his administratrix after his death. But it would appear that that case is distinguishable from the case at bar, for, as is pointed out in the course of the court's opinion, the action in that case could not have arisen had there been no purchase of a ticket, i. e. if there had been no contract. Also, it does not appear that the statutes concerning the survival of causes of action in Nevada are akin to ours. Further, we are not inclined to believe that this statute was intended to alter the rules governing the survivorship of actions, as declared by Section 5559, supra, or that it

was the purpose of the legislature to declare thereby that the breach of every contract, regardless of the real substance of that breach and the nature of the damages flowing from it, always constituted a cause of action, which would survive. We are confirmed in this view when we come to examine the authorities dealing with statutes of this character.

In Warner v. Benham, 126 Wash. 393, 218 Pac. 260, the court, having before it a statute identical to all intents and purposes with Section 6835, supra, decided that such an enactment did not authorize the maintenance of a suit for breach of a promise of marriage against the defendant's administrator, the court holding that a promise of marriage which, while a civil contract, was unique in character. So, in Wade v. Kalbfleisch, 58 N. Y. 282, 17 Am. Rep. 250, under a probate statute of the state of New York, in substance possessing no material difference from our own Section 6835, supra, the court of appeals had previously arrived at the same result as did the Washington court. In the course of that opinion it is said:

"In actions on contract the damages are limited by a fixed rule to the pecuniary loss sustained, while in this the damages are in the discretion of the jury, to the same extent as in strictly personal actions, such as slander, malicious prosecution, assault and battery and the like; and the recovery may be, and usually is, principally for injured feelings, anxiety of mind, wounded pride and blighted affections. (L. R. (1 C. P.), 331; 87 E. C. L., 659; 42 N. Y., 474; 45 Maine 348; 8 Barb., 326; 15 N. Y., 353.)

"* * * In short, looking at the substance of the action, no court would be justified in holding that it is an action upon contract, within the meaning of the statute referred to."

The comparatively late decision in Bernstein v. Queen's County Jockey Club, 225 N. Y. S. 449, by the appellate division of the Supreme Court, we find of material assistance on the point under consideration here. The plaintiff

in that case went to a restaurant on the club's premises conducted by one Healy, and ordered food, which was served to him. The food contained glass, which caused plaintiff serious internal injuries. The complaint contained two causes of action, the first being based upon defendant's negligence and the second upon a breach of the implied warranty that the food was fit for human consumption. The action was brought against the club and Healy. Later Healy died and plaintiff's motion for an order substituting his personal representatives as defendants was denied by the lower court. In holding that the order was properly made, it was said in part:

"It seems to be conceded by the appellant that the first cause of action, based upon allegations of negligence, abated with the death of the defendant Healy, and cannot be revived. As to the second cause of action, however, plaintiff contends that it is founded upon a breach of contract, namely, the implied warranty that the food in question was fit for human consumption, and that this cause of action survives Healy's death. Whether it does or not is the only question presented upon this appeal. That an action lies to recover damages in cases of this character, either upon the theory of a tort or a breach of contract, has been held in Boyce v. Greeley Square Hotel Co., 228 N. Y. 106, 126 N. E. 647, and therefore plaintiff had such a cause of action against Healy.

"Appellant contends that, under Section 116 of the Decedent Estate Law, all actions upon contract survive the death of the party. That section provides that:

" 'Actions upon contract may be maintained by and against executors, in all cases in which the same might have been maintained, by or against their respective testators.'

"But Section 120 of the same law (as added by Laws 1909, c. 240) provides as follows:

" 'For wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or after his death, by his executors or administrators, against such wrongdoer, and after his death against his executors or administrators, in the same

manner and with the like effect in all respects, as actions founded upon contracts. This section shall not extend to an action for personal injuries, as such action is defined in Section thirty-three hundred and forty-three of the Code of Civil Procedure; except that nothing herein contained shall affect the right of action now existing to recover damages for injuries resulting in death.'

"Section 3343 of the Code of Civil Procedure, referred to in Section 120, supra, is now Section 37-a of the General Construction Law (as added by Laws 1920, c. 917), and defines personal injury to include:

" 'Libel, slander, criminal conversation, seduction and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another.'

"At first impression, it might seem that all actions upon contract would survive, irrespective of the nature of the contract or the damage or injury sustained, and that, under Section 120, all actions in tort would survive, if they related to injuries to 'property, rights or interests of another,' but would not survive where they were solely injuries to the person. But, in applying these statutes, it has been held that the form of the action is immaterial, and that actions however classified for wrongs done to the property, rights or interests of another, survive, while actions for personal injuries, both contract and tort alike, abate.''

A careful search has not revealed any authority which would indicate that the New York and Washington cases last above cited were incorrectly decided.

Our attention has been directed by the plaintiff to the case of Koski v. Pakkala, 121 Minn. 450, 141 N. W. 793, and it is said that that case is analogous on principle to the case at bar. That action was one upon a saloon keeper's bond which had been given by him pursuant to law with a surety company as surety thereon. He violated, during his lifetime, the condition of the bond by selling whiskey to one D. while the latter was intoxicated, and who then shot and killed the plaintiff's husband. Pending trial the saloon keeper died and his administrator was

substituted as defendant in his stead. It was held that the action could be maintained against the personal representative, as an action on contract. It does not appear that the Minnesota statutes dealing with the survivability of the cause of action are like ours. Additionally distinguishing the case, on principle, from that now before us, we find in the opinion of the court the following significant language:

"The action is not for the injury to her husband, which the unlawful sale brought about, but for an act, whether in itself a tort or not, amounting to a breach of the covenants of the bond, and which resulted in an injury to her, by depriving her of her means of support."

And certain cases from Indiana and New York are cited in support of the court's conclusion. An examination of these decisions, so far as they deal with the question of survivorship of actions, makes clear the real basis of the liability allowed under a statute requiring a bond of this character. That basis was declared to be the causation of an injury to a definite property right — the plaintiff's "means of support," which was damaged by the breach of the condition of the bond.

For example, the first case cited by the Koski decision, in support of its view, is State ex rel. v. Soale, 36 Ind. App. 73, 74 N. E. 1111. That case in turn cites and relies upon Moriarity v. Bartlett, 34 Hun. 272. There the court, discussing the question whether a cause of action on a liquor dealer's bond given pursuant to law, would survive against personal representatives, and holding that it did, said:

"It follows, therefore, that the cause of action under this act does not necessarily arise upon any tort. Because the sale of the liquor is a lawful act, or may be so, since the vendor may be licensed. And the act of the intoxicated person need not be a tort according to the decisions

above cited. If the injury were to person or property it probably would arise upon a tort of the intoxicated person. If it were to 'means of support,' it need not, as above shown. The cause of action, therefore, is unlike any other, for it clearly does not arise on contract. And it does not necessarily arise upon a tort. If the intoxicated person were to injure the person of the plaintiff it would seem that the action could not survive against the executors of the vendor under the Revised Statute above cited. If the intoxicated person were to injure the property of the plaintiff it would seem that the action would survive against such executors. If the intoxicated person were to injure the means of support, or if such means of support were to be injured in consequence of such intoxication, should such injury be likened to an injury to the person or to an injury to property? It seems to us that the spirit of the statute under the interpretation above referred to, given by the courts, is to grant the plaintiff a quasi ownership in these 'means of support': whatever those words may mean. Something of pecuniary value has been taken from the plaintiff. And the statute makes the defendant liable therefor although he has been guilty of no tort. So far then as the plaintiff's means of support have been injured (that is, under the decisions, *diminished)* the defendant is made liable, and his estate should be liable also.''

Again, in American Surety Company v. State ex rel. Holtam, 46 Ind. App. 126, 91 N. E. 624, another of the cases upon which the Koski decision is rested, we find this language:

''Can it be said that the appellee's cause of action in this case arises out of an injury to the person? A cause of action may be said to arise out of a violation of duty by one person that injuriously affects the rights of another. Here the violation of duty averred, which created the liability on the bond of the appellant, was the unlawful sale of liquor by the saloon keeper, whose sureties appellant became. The right of appellee which this violation of duty invaded was not an injury to her person or to the person of her husband, but an injury 'to her means of

support,' and out of this breach of duty and this violation of right appellee's cause of action arose. It was not founded on the death of her husband; the death of the husband was an intervening incident, fixing the measure of damages, not a fact determining the right of action. There is no statutory provision by which a cause of action arising under the statute relied on by appellee survives, and, had the death of the husband been the foundation of the right of action, then by the well-recognized rule of the common law, as well as the express terms of the statute, the appellee's cause of action would have expired with the death of the party injured, as well as with the death of the wrongdoer.''

It is not difficult to understand, under the authorities we have hereinabove reviewed, that if the violation of a contract results in an injury to a property right of the plaintiff, it would survive against the personal representatives of the deceased wrongdoer.

From what has been said, it follows that the judgment of the District Court of Hot Springs County must be reversed, and the cause remanded, with instructions to dismiss the action.

*Reversed and Remanded.*

BLUME, C. J., and KIMBALL, J., concur.