[No. 27421. Department One. August 11, 1939.]

ALTA M. COMPTON, *Appellant,* v. RICHARD BARTELSON EVANS, *as Administrator, et al., Respondents.*[1]

[1]Reported in 93 P. (2d) 341.

*J. W. Greenough* and *Graves, Kizer & Graves,* for appellant.

*R. E. Lowe* and *Clare E. Turner,* for respondents.

ROBINSON, J.—Plaintiff brought this action to recover damages for personal injuries received when an automobile in which she was riding and which was being driven by Mrs. Blanche Evans left the highway and overturned. Mrs. Evans was killed in the accident. The suit was brought against her surviving husband, James H. Evans, as executor of her will and as surviving member of the community. Subsequent to the commencement of the suit, Mr. Evans died, and his executors and administrator *de bonis non* with the will annexed of the estate of Mrs. Evans were substituted as parties defendant.

The complaint alleged that plaintiff was employed as a servant and housekeeper by the Evans family and was entitled to transportation in the family automobile when the family shifted its place of residence; and that, while the family was traveling from a summer home maintained at Lake Christina, British Columbia, to the home maintained at Evans, Washington, Mrs. Evans drove the car at an excessive speed, causing it to leave the highway and overturn. Plaintiff alleges that she waives the tort and elects to sue on the contract. A demurrer to the complaint, based on the ground that the cause of action did not survive the

death of Mr. and Mrs. Evans, was sustained by the court, and plaintiff appeals.

■ Appellant concedes that, at common law, a cause of action for injuries to the person, not based on contract and not affecting property of any kind, did not survive the death of the wrongdoer. *Hambly v. Trott,* 1 Cowp. 371, 2 Eng. Rul. Cas. 1. It is said by Sir Frederick Pollock, an eminent English writer on the law of torts, that the maxim *actio personalis moritur cum persona* is one of some antiquity, but its origin is obscure and post-classical. Pollock, The Law of Torts (11th ed.), 61. The same writer, in criticizing the rule, says:

"It is better that the residuary legatee should be to some extent cut short than that the person wronged should be deprived of redress." *Id.,* p. 62.

The rule has been severely criticized in a comparatively recent issue of The Harvard Law Review, Vol. 48, p. 1008; and in the case of *Harris v. Nashville Trust Co.,* 128 Tenn. 573, 162 S. W. 584, Ann. Cas. 1914C, 885, 49 L. R. A. (N. S.) 897, the court, by way of introduction to a number of severely critical quotations from text writers and judicial opinions, said:

"The maxim, '*Actio personalis moritur cum persona,*' is by no means a favorite with the courts. It has no champion at this date [1914], nor has any judge or law writer risen to defend it for 200 years past."

It has recently been held by the supreme court of Florida, in *Waller v. First Sav. & Trust Co.,* 103 Fla. 1025, 138 So. 780, that the rule, at least in so far as it related to rights of action against defendants, did not become a part of the common law of Florida, because contrary to the customs, institutions, and general policy of the state; and the rule, as it affects the asserted rights of deceased plaintiffs, has been repudiated in Nebraska in *Wilfong v. Omaha & Council Bluffs St.*

*R. Co.,* 129 Neb. 600, 262 N. W. 537, for substantially the same reasons.

It was, perhaps, open to this court, in its earliest cases touching the matter, to refuse to follow the ancient rule in whole or in part, upon the ground that it was "incompatible with the institutions and conditions of society in this state." Rem. Rev. Stat., § 143 [P. C. § 8252]. It held, however, that the rule, as it existed in England at the date of the Declaration of Independence, became a part of the common law of the state. Our legislature has from time to time passed statutes dealing with certain phases of the matter; and if further changes are necessary and desirable, they must be made by that department of the state government. The existing law in this jurisdiction is stated in the following excerpt from the opinion in *Jonas v. Taylor,* 166 Wash. 302, 6 P. (2d) 615:

"The rule is that a pending action for unliquidated damages founded on the tort of a defendant, dies with the death of the defendant. *State ex rel. Baeder v. Blake,* 107 Wash. 294, 181 Pac. 685; *Bortle v. Osborne,* 155 Wash. 585, 285 Pac. 425. Not simply that the action cannot be prosecuted against the heirs and legal representatives of the deceased, but that the *action dies.*"

The trial court held that the instant action is founded on tort. The appellant contends that it is founded upon contract, and that it is therefore maintainable under Laws of 1917, chapter 156, p. 685, § 148, Rem. Rev. Stat., § 1518 [P. C. § 9886], which section reads as follows:

"Actions for the recovery of any property or for the possession thereof, *and all actions founded upon contracts,* may be maintained by and against executors and administrators in all cases in which the same might have been maintained by and against their respective testators or intestates." (Italics ours.)

As an approach to the solution of the matter, we first examine the allegations of the complaint. Paragraph 1 alleges that the plaintiff entered into an oral contract of employment with the marital community consisting of James H. Evans and his wife. Paragraph 2 alleges, in substance, that the plaintiff was to act as cook, housekeeper, and general household servant; such service to be rendered at the Evans' community residence in Stevens county, and at their summer home at Lake Christina, in British Columbia. Paragraph 3 is as follows:

"By the terms of said contract the community promised to pay to the plaintiff the sum of $30 per month during the term of her employment. And the community further agreed and was obligated to perform and it was understood by both parties that it would perform the following terms, said terms being integral parts of the contract between the community and plaintiff either by express agreement or by necessary and natural implication, and said terms were fully recognized, performed and relied and acted upon as an integral part of said contract by both parties thereto at all times from its creation until its breach described in paragraph 5 and following paragraphs hereof; to furnish to plaintiff board and room at Evans, Washington, or at Lake Christina, B. C., or at either or both of said places or at any other place where plaintiff's contract of employment required her to be; to furnish to plaintiff safe and adequate transportation from and between points where she was required by the community to render her services under the terms of her contract with it, and particularly from and between the community's homes at Evans, Washington, and Lake Christina, B. C.; and to exercise due and reasonable skill and care in the provision of board, room, and transportation as above stated during each and all of the times and occasions plaintiff should be engaged in the discharge of her duties under her contract with the community."

Paragraph 4 alleges that plaintiff fully performed and executed the contract until it was breached, as described in succeeding paragraphs. Paragraph 5 alleges, in substance, that the community breached the contract by not exercising due and reasonable skill in transporting her from the summer residence to the Stevens county residence, but that Mrs. Evans, in transporting her between the two places,

". . . negligently, carelessly, and recklessly drove and controlled said car so that it left the road, plunged over an embankment and injured plaintiff as stated in paragraph 7 hereof. The acts and omissions of the community and of Mrs. Evans as the agent of the community which proximately caused the accident above described and plaintiff's injuries were:

"(a) The selection by the community of a driver known to the community to be or who the community reasonably should have known to be incompetent and unqualified to operate the automobile used by the community to transport plaintiff as the community agreed in its contract with plaintiff.

"(b) The operation of said automobile by the community's agent at an unreasonable, excessive, dangerous and unlawful speed while transporting plaintiff.

"(c) The failure and neglect of the community's agent operating the automobile to keep it under a reasonable degree of control while transporting plaintiff.

"(d) The failure and neglect of the community's agent operating the automobile to maintain a reasonable lookout to observe road conditions ahead.

"(e) The failure and neglect of the community's agent operating the automobile to drive it at a sufficiently slow speed when approaching and traveling on a descending grade to enable the agent to operate the automobile with a reasonable degree of safety for plaintiff occupying it.

"(f) The failure and neglect of the community's agent operating the automobile to drive it at a sufficiently slow speed when approaching and traveling on a curve in the road to enable the agent to operate

the automobile with a reasonable degree of safety for plaintiff occupying it.

"(g) The failure and neglect of the community's agent operating the automobile to drive it at a sufficiently slow speed to provide a reasonable degree of safety for plaintiff occupying it when approaching and traveling through a cut made by the road going down a grade in and through a hill in such manner that that portion of the road ahead of the descending automobile and around a curve was not visible to the operator of the automobile.

"(h) The failure and neglect of the community's agent operating the automobile to drive the automobile on the operator's right side of the road."

Paragraph 6 alleges that the contract was in full force and effect at the times mentioned in paragraph 5. Paragraphs 7 to 12, inclusive, describe plaintiff's injuries and set up her claims for damages. Paragraph 13 sets up the fact of administration, and that plaintiff's claim has been filed and rejected. Paragraph 14 reads as follows:

"Plaintiff has elected to waive any and all causes of action in tort unconnected with contract she may have had by virtue of the facts hereinabove alleged and she solely asserts and stands upon her cause of action under and by virtue of the contract above alleged."

Reduced to its lowest terms, the complaint alleges that there was a contract wherein the community employed the plaintiff as a house servant for an indefinite period. Since the community lived, alternately, in different residences, it was a subsidiary term of the contract that the community would transport the plaintiff when the community moved from one residence to the other. It is not alleged that the community expressly agreed to transport her safely. If that became a part of the contract, we take it that it became so by a process of implication; that is to say, since the community agreed to transport the plaintiff, and the

law imposes upon one who, by private contract, transports another a duty to use due care in so doing, then, by implication of law, the obligation to use due care is read into the contract.

A recent case, which should be read in its entirety, *McClure v. Johnson*, 50 Ariz. 76, 69 P. (2d) 573, states the formula which should be used in determining whether an action is in contract or in tort, as follows:

"Whether an action is in contract or in tort should be determined in the first place from the pleadings, and by an examination and consideration of the essential allegations of the complaint rather than the form adopted by the pleader, what the pleader calls it, the understanding of counsel or of the trial court, and the question must be determined by reference to the complaint as a whole, and not by particular words or allegations considered apart from the context. 1 C. J. S. 1100, Actions, § 46. We think a good test to be used in determining whether a pleading sets up a case in contract or in tort may be stated as follows. When an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract, *but where there is a contract for services which places the parties in such a relation to each other that, in attempting to perform the promised service, a duty imposed by law as a result of the contractual relationship between the parties is violated through an act which incidentally prevents the performance of the contract, then the gravamen of the action is a breach of the legal duty, and not of the contract itself,* and in such case allegations of the latter are considered mere inducement, showing the relationship which furnishes the right of action for the tort, but not the basis of recovery for it, and in such cases the remedy is an action *ex delicto*." (Italics, in part, ours.)

See, also, *Banfield v. Addington*, 104 Fla. 661, 140 So. 893, and cases cited therein; *Pecos & N. T. R. Co. v. Amarillo St. R. Co.*, 171 S. W. (Tex. Civ. App.) 1103,

1105; *Tuttle v. Short,* 42 Wyo. 1, 288 Pac. 524, 70 A. L. R. 106.

Clearly, under the rule as stated by the Arizona court and in the cases just cited, the complaint in the instant case states an action in tort. It states a contract for services which placed the parties in such relation to each other that, in attempting to perform the services, Mrs. Evans violated a duty imposed upon her by law by reason of her contractual relationship with the plaintiff, by an act which incidentally prevented her performance of the contract.

Let us suppose that the facts pleaded were that, pursuant to the contract, Mrs. Evans had started to transport the plaintiff from the one residence to the other, and that, midway in the journey, she refused to transport her farther. The weather was cold and inclement, and plaintiff was compelled to complete the journey on foot. Due to the consequent exposure, the plaintiff suffered a severe and costly illness. Let us further suppose that, after Mrs. Evans' death and the appointment of Mr. Evans, as executor, followed by his death, the plaintiff brought such an action as this to recover for that damage—would it lie, under Code § 1518? Without expressly so deciding, we think that it might be entertained, upon the theory that the damage suffered was occasioned by the breach of the contract to furnish transportation, as distinguished from a breach of the duty imposed by law to exercise due care. To put the matter in another way, the gist of the plaintiff's complaint in the supposed case would be: The defendant did not transport me; that is, she breached the contract. The gist of the complaint in the instant case is: The defendant did not exercise due care in transporting me; that is, she violated a duty imposed by law.

The case of *Forrester v. Southern Pac. Co.,* 36 Nev.

247, 134 Pac. 753, 136 Pac. 705, 48 L. R. A. (N. S.) 1, upon which appellant relies, among others, is plainly a contract case. Forrester had a railroad ticket entitling him to be transported from Ogden to San Francisco. The railroad company ejected him from the train at a remote siding in Nevada. Due to the consequent exposure, he became ill and died. The administrator of his estate sued under a statute exactly like our § 1518. The court held that it was an action founded on a contract, which might have been maintained by his intestate in his lifetime. And so it was; for the damages sought flowed directly from the breach of the written contract of carriage. But, in the instant case, the injuries for which recovery is sought were allegedly caused by one or more of the eight violations of duty so elaborately pleaded in paragraph 5 of the complaint.

We find, in our own reports, a case in which the plaintiff might have set out all the facts and alleged that he elected to waive the tort and prosecute the action in contract, just as the appellant has done in this case. Instead of doing so, he, in effect, made his election in advance by attempting to state an action in contract only, making no mention whatever of negligence. He alleged that he was employed as a bridge carpenter; that, at the time he was employed, it was agreed that, if injured, he would be furnished adequate and efficient hospital facilities, medical attendance, and care; and that, while so employed, he fell from a bridge and injured his foot. He was placed in the company hospital. The company doctor diagnosed his injury as a sprain, and in about six or seven weeks discharged him from the hospital as cured. It subsequently developed that the bones of his foot had been broken. The action was so tardily commenced that, if it were held to be an action in tort, it was barred by

the statute of limitations; but maintainable, if held to be an action upon a contract. The court said, in part:

"The appellant says that it was an action upon a contract to furnish hospital facilities and medical attendance, and the respondent says that it is one in tort, based upon the failure of the doctor to properly diagnose and treat the injured foot. To determine whether an action is one upon contract or in tort, attention will be given to the substance of the action rather than to the form and the nature of the right the violation of which creates the right of action. *School District No. 18 v. Twin Falls State Bank & Trust Co.*, 52 Ida. 200, 12 P. (2d) 774; *Bates v. Bates Machinery Co.*, 230 Ill. 619, 82 N. E. 911, 12 Ann. Cas. 175; *Union Tool Co. v. Farmers', etc., Nat. Bank,* 192 Cal. 40, 218 Pac. 424, 28 A. L. R. 1417.

". . . In the complaint, it is said that the appellant did not receive adequate and efficient hospital service and medical attendance and care,

" '. . . in that prompt and efficient attention and examination was not given and made to ascertain and determine the extent of the injuries that the plaintiff had sustained and from which he was suffering. . . .'

"The evidence offered is to the same effect.

"We come then to the question of what is the nature of the right the violation of which creates the right of action. *The failure of the doctor to make a proper diagnosis and give the right treatment was a breach of his duty as a physician, founded upon his legal obligations as such, without reference to the contract.* The action, being one for this breach of duty, sounded in tort and not in contract. *Nelson v. Harrington,* 72 Wis. 591, 40 N. W. 228, 1 L. R. A. 719, 7 Am. St. 900; *Mueller v. Winston Bros. Co.,* 165 Wash. 130, 4 P. (2d) 854. The substance of the action, as shown by the complaint and by the evidence, was the failure of the doctor to properly diagnose and treat.

"While negligence is not specifically mentioned in the complaint or the evidence, the facts alleged in the complaint and supported by the testimony show that the gist thereof was the malpractice of the physician, which is negligence and not a breach of the contract

of employment. [Citing cases.]" (Italics ours.) *McDonald v. Camas Prairie R. Co.*, 180 Wash. 555, 38 P. (2d) 515.

In this case, the substance of the action is the elaborately alleged negligence of Mrs. Evans, the breach of her legal duty to use due care in performing the contract with plaintiff, a duty which (leaving the host and guest statute out of consideration) existed independent of contract.

What is really sought in this case is to induce the court to read into the contract, as a term thereof, the general legal obligation to use due care, and then, having thus made it a term of the contract, to hold that the contract was breached by the alleged failure to use due care, as set out in paragraph 5 of the complaint. As was recently said in *Noble v. Martin*, 191 Wash. 39, 70 P. (2d) 1064:

"It has not been the policy of this court to imply a contract where the gravamen of the action is a negligent or tortious act, as may be seen from a discussion of the matter in *Northern Grain & Warehouse Co. v. Holst*, 95 Wash. 312, 163 Pac. 775."

Other illustrations might have been cited, such as *Grussemeyer v. Harper*, 187 Wash. 508, 60 P. (2d) 702. In a number of jurisdictions, the action in that case would have been held to be in contract, upon the theory that one who takes the oath as a corporate director impliedly agrees to use care in the management of the corporate affairs, and that, in committing acts of negligence, he breaches that agreement. But this court held that negligence is the gist of such an action. See, also, *O'Toole v. Empire Motors, Inc.*, 181 Wash. 130, 42 P. (2d) 10, and *Riddoch v. State*, 68 Wash. 329, 123 Pac. 450, Ann. Cas. 1913E, 1033, 42 L. R. A. (N. S.) 251, in which the court quotes, with approval,

a statement from the decision of the supreme court of the United States in *Hill v. United States,* 149 U. S. 593, 37 L. Ed. 862, 13 S. Ct. 1011, to the effect that the settled distinction between contract and tort cannot be evaded by framing a claim as upon an implied contract.

In the *Holst* case, *supra,* the court said, among other things:

"Whatever may be the relation of public officials to the government they serve, in seeking to enforce liability against them because of their dereliction of duty, such liability is not based upon breach of an express or implied contract, but arises, if at all, out of the tort embraced within the neglect or failure giving rise to the injury complained of, just as an action by a passenger against a common carrier for injuries, in a sense grows out of the breach of an implied contract to safely carry, yet the gravamen of such action, when pleaded, is the negligent act which is the proximate cause of the injury."

Substantially the same illustration was used in the *Riddoch* case:

"The contention that this is an action on contract and not in tort cannot be sustained. . . . The same elements are present in every case of injury to a passenger on a railroad or street car. The duty to carry safely is assumed by contract, but the action is in tort."

In our opinion, this action is founded on tort. The effect of adopting the appellant's theory would be to compel the lower court to entertain an action which the law says is dead. *Jonas v. Taylor,* 166 Wash. 302, 6 P. (2d) 615. In the consideration of other cases, we have not felt at liberty to disregard the distinction between actions founded on tort and those founded in contract in order to save alleged causes of action from the devastating operation of limitation statutes. We would not be justified in disregarding that distinction

in this case in order to avoid the operation of other existing rules of law because the opinions of many eminent legal authorities have been cited to the effect that such rules are unwise and improvident. Even if these opinions are sound, they are not material in the present inquiry, since the court is bound to apply the law as it exists.

The judgment appealed from is affirmed.

BLAKE, C. J., STEINERT, JEFFERS, and MAIN, JJ., concur.

