CLIFFORD LEWIS MULL and ROBERT B. LAUGH-
LIN, as Administrator of the Estate of MARTHA
L. MULL, Deceased,

*Plaintiffs and Appellants,*

vs.

JACK L. WIENBARG, as Administrator of the Estate
of GEORGE L. WIENBARG, Deceased, and JACK
L. WIENBARG, as Administrator of the Estate of
IRMA LOUISE WIENBARG, Deceased,

*Defendants and Respondents.*

(No. 2438; December 13th, 1949; 212 Pac. (2d) 380)

412

For the plaintiffs and appellants the cause was submitted upon the brief of Ewing T. Kerr and Kline & Kline all of Cheyenne, Wyoming, and oral argument of Mr. Arthur Kline.

For the defendants and respondents the cause was submitted upon the brief and also oral argument of Albert D. Walton and Vincent Mulvaney, both of Cheyenne, Wyoming.

415

## OPINION.

BLUME, Justice.

This is an action in which the plaintiffs seek damages from the defendants on account of negligence of defendant's intestates in the operation of an automobile, causing injuries to one of the plaintiffs and also the death of Martha L. Mull, deceased. It is not necessary to mention motions filed in the case. The court sustained a demurrer to the petitions herein filed and, the plaintiff's refusing to plead further, a judgment was rendered in favor of the defendants. From that judgment, plaintiffs have appealed to this court.

The facts are substantially as follows: On July 22, 1946, George L. Wienbarg, owner of an Oldsmobile automobile, and Irma Louise Wienbarg, his wife, driver of the car, were driving in an easterly direction on highway No. 30 from Laramie toward Cheyenne. Clifford Lewis Mull, one of the plaintiffs herein, was driving a Studebaker automobile in a westerly direction on the foregoing highway, having with him Martha L. Mull, apparently his mother. The two automobiles collided about five miles west of the City of Cheyenne. George L. Wienbarg and Irma Louise Wienbarg, the alleged tortfeasors, were killed in the collision. The plaintiff, Clifford Lewis Mull, sustained injuries, and Martha L. Mull died as a result of the collision on July 26, 1946. The plaintiffs in their petition allege that the collision arose by reason of the negligence of Irma Louise Wienbarg in operating the Oldsmobile automobile. They presented their claim for damages to the defendant, Jack L. Wienbarg, who was appointed as administrator of the estates of George L. Wienbarg and Irma Louise Wienbarg, deceased. The plaintiff, Clifford Lewis Mull claims damages in the sum of $3,440.67 by reason of injuries sustained by him in the collision and the plaintiff, Robert B. Laughlin

claims damages in the sum of $20,000 as administrator of the estate of Martha L. Mull, deceased. Plaintiffs also allege that George L. Wienbarg carried insurance with the St. Paul Indemnity Company, by which the Indemnity company agreed to pay in behalf of said Wienbarg any and all amounts which he might become obligated to pay by reason of the liability imposed upon him by law for damages caused by reason of the operation of said automobile. The demurrer herein was sustained on the ground that the cause of action of plaintiffs did not survive the death of George L. Wienbarg and Irma Louise Wienbarg.

The case of Tuttle vs. Short, 42 Wyo. 1, 288 P. 524, 70 A. L. R. 106, presents a similar state of facts. In that case, one McFarlane, Sheriff of Hot Springs County, was driving an automobile, having in his car the Undersheriff, Goodfellow, and one Calvin P. Stephens who was at the time in the custody of the sheriff. In that case, it was alleged that the sheriff drove the automobile in a negligent manner by reason of which the automobile was precipitated over the embankment and into a deep ravine, in consequence of which all of the occupants of the car, including the sheriff, were killed. The case was decided in 1930 and we held that under the rule of the common law (which was examined extensively) an action on behalf of the administrator of the estate of Calvin P. Stephens was not maintainable after the death of the tortfeasor (the sheriff) against the administrator of his estate. We also held that no action under the circumstances was maintainable against a surety on the official bond of the sheriff.

The legislature in 1947 by Chapters 95 and 124 of the Session Laws of that year changed the common law rule above mentioned, involved in Tuttle vs. Short. It is not, however, claimed that that change was re-

troactive, so that the law involved in the case at bar is the same as the law that was involved in that case. Hence, while counsel for plaintiffs do not quite admit it, we think that the real question in the case at bar is as to whether or not we should overrule the case of Tuttle vs. Short, supra. Counsel for appellants claim that we overlooked and did not consider some important matters in that case, and various reasons are advanced why we should not apply the rule of that case in the case at bar. So we shall proceed to consider these matters in detail.

## I. CONSTITUTIONAL PROVISIONS.

(a) Section 8 of Article 1 of our Constitution provides: "All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay." That provision was not considered in Tuttle vs. Short, supra. It is contended that the rule of common law here considered is inconsistent with this constitutional provision and is repealed thereby, thus creating a cause of action not existing at common law. Counsel are supported in their contention by the cases of Wilfong vs. Omaha and Council Bluffs St. Ry. Co., 129 Neb. 600, 262 N. W. 537 and Waller vs. First Savings and Trust Co., 103 Fla. 1025, 138 So. 780, decided by a divided court. It is intimated in Adams vs. Iten Biscuit Co., 63 Okla. 52, 162 P. 938, 942, that a similar constitutional provision appears in the constitutions of thirty-eight different states, the first appearing in the Constitution of Maryland in 1776. In view of this, it is worthy of comment that seemingly, during all of the nineteenth century, the ingenuity of neither counsel nor courts ever suggested that such provision abrogated the rule of the common law here in question, though a number of cases decided during that century involved and upheld that rule. It was left to the twen-

tieth century and particularly the fourth decade thereof, that a fuller meaning was attempted to be given to the foregoing constitutional provision. However, the Nebraska and Florida courts stand alone in that respect.

Courts of four different jurisdictions have decided the exact opposite to the holding in those cases. Brown vs. Wightman, 47 Utah 31, 151 P. 366, L. R. A. 1916, A, 1140 (1915) ( State ex rel. vs. Seehorn, 344 Mo. 547, 127 S. W. 2d 418 (1939), Simons vs. Kidd (S. D.), 38 N. W. 2d 883 (1949), Moon vs. Bullock, 65 Ida. 594, 151 P. 2d 765 (1944). The court of a fifth jurisdiction, namely Washington, has specifically refused to adopt the rule announced in the Nebraska and Florida cases. Compton vs. Evans, 200 Wash. 125, 93 P. 2d 341. And the court of a sixth jurisdiction, namely of New Mexico, has held that local conditions do not so differ from those elsewhere as to justify denial of application of the common law rule here involved, the contrary of which was intimated in the Nebraska and the Florida cases. Ickes vs. Brimhall, 42 N. Mex. 412, 79 P. 2d 942. The Utah case, supra, held that the death of the tortfeasor abated the cause of action for malicious personal injury. It was, however, contended that a constitutional provision like ours repealed the rule of the common law. The court after citing that provision stated as follows: "This is a general provision, which in the same or similar language will be found in the Constitutions of at least 28 states in the Union, to wit: Alabama, Colorado, Connecticut, Delaware, Florida, Idaho, Indiana, Kansas, Kentucky, Maine, Maryland, Minnesota, Mississippi, Missouri, Montana, New Hampshire, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, West Virginia, Wisconsin, and Wyoming. The courts have, however, always considered and treated those provisions, not as creating new

rights, or as giving new remedies where none otherwise are given, but as placing a limitation upon the Legislature to prevent that branch of the state government from closing the doors of the courts against any person who has a legal right which is enforceable in accordance with some known remedy. Where no right of action is given, however, or no remedy exists, under either the common law or some statute, those constitutional provisions create none. It is accordingly held in some, if not all, of those states in which the aforesaid constitutional provisions are in force, and where the common law prevails, that in the absence of a statute to the contrary an action like the one at bar abates with the death of either the injured person or of the one inflicting the injury. While the common-law rule is a harsh one, and its enforcement in this case is peculiarly unjust, we nevertheless can see no way of escaping it. The right and power, as well as the duty, of creating rights and to provide remedies, lies with the Legislature, and not with the courts. Courts can only protect and enforce existing rights, and they may do that only in accordance with established and known remedies."

The Missouri case above cited, involved an action for personal injuries inflicted by a tortfeasor. Before that suit was brought on for trial, the tortfeasor died. The court held that under the rule of the common law, the cause of action against the tortfeasor did not survive, and contrary to the contention of counsel, held that a constitutional provision like ours did not change the common law rule. The court among other things said: "The rule that tort actions did not, at the common law, survive the death of the wronged or the wrongdoer has been so long recognized and so often stated by this court, as well as courts in other jurisdictions, that further citation of authorities would be superfluous. We think there can be no doubt but that

it was understood to be a part of the common law by the framers of our constitution when that instrument was adopted and by our legislature when, in an early day in our state history, it adopted the common law, except as it had been or might be changed by statute, as the law of this state. We do not believe Sec. 10, Art. 2, of the constitution was intended to create, of its own vigor, any new rights or remedies which were not in existence or recognized at the time of its adoption. We think it was designed to protect the citizen in the use of the courts to enforce such rights and remedies as were recognized by the law at the time of its adoption and as might thereafter be created by law."

In the Idaho case, supra, speaking of a constitutional provision similar to ours, the court said in part: " 'I cannot so interpret Sec. 18 of Art. I. It grants no new rights, modifies no existing law, and prescribes no new duties. It merely admonishes the courts to administer "right and justice without sale, delay or prejudice." It does not, and was not intended to enlarge or to extend the rights or the remedies of the citizen. Its purpose and effect are to secure to the citizen the rights and remedies that the law as it then existed, or as it might be changed from time to time by the Legislature, afforded.' "

The South Dakota case, supra, was decided in August, 1949, and considered a constitutional provision similar to ours, namely, Article 6, Section 20, of the Constitution. The court, speaking of that provision, states: "It is a guarantee that 'for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy.' * * * It does not mean that the courts may usurp powers which belong to the legislative branch of the government." Continuing, the court approves and quotes at length from the Utah case, supra, and then concludes: "We, therefore, con-

clude that Art. VI, Sec. 20 of the state constitution is not a survival law, and we adhere to the former decisions of this court to the effect that actions for damages for wrongful death do not survive the death of the injured person or the wrongdoer at common law; that the right of recovery and the liability therefor is dependent upon the extent to which such rights and liabilities have been created by legislative action;".

What has above been said is strongly supported by other authorities, though dealing with a different tort or different rule of law. Thus some of them state that the term "injury" as used in a constitutional provision here mentioned, means such an injury as the law recognizes or declares to be actionable. Stewart vs. Standard Publishing Co., 102 Mont. 43, 49, 55 P. 2d 694, Jackman vs. Rosenbaum, 263 Pa. 158, 168, 106, Atl. 238, Taylor vs. Keefe, 134 Conn. 156, 56 Atl. 2d 768, State vs. McPhail, 182 Miss. 360, 180 So. 387. See 16 C. J. S. 1496. Still other authorities state in language already familiar, that a provision of the constitution here considered does not create any new right, but is merely a declaration of a general fundamental principle. 11 Am. Jurisprudence 1125, 16 C. J. S. 1493. Thus in Francis vs. Western Union Telegraph Co. 58 Minn. 252, 59 N. W. 1078, 25 L. R. A. 406, the court said of such constitutional provision that it "is but declaratory of a general fundamental principle upon which the courts have always acted, and which would have been the law even if not incorporated in the constitution. It creates no new legal rights or new legal wrongs, and establishes no new rule of damages. It merely declares that for any wrong, recognized as such by law, a person shall have a remedy to obtain the redress to which he is entitled according to the principles of law." In Conley vs. Conley, 92 Mont. 425, 15 P. 2d 922, 926, the court, referring to a constitutional provision as above mentioned, states: "The

salutary declarations of section 6 simply recognize fundamentals of government dear to the American heart; they assert nothing new in the way of constitutional declarations, and clearly were not intended to affect statutory laws then existing." And the court said further: "Where a right sought to be asserted was not known to the common law at the time it became a part of the jurisprudence of this state, 'authority for the right, if it exists, must be found in the acts of the legislature.' " In the case of Shea vs. North-Butte Mining Co., 55 Mont. 522, 179 P. 499, 502, the court in speaking of a constitutional provision similar to that here considered, stated as follows: " 'It means no more nor less than that, under the provisions of the Constitution and laws constituting them, the courts must be accessible to all persons alike, without discrimination, at the time or times, and the place or places, appointed for their sitting, and afford a speedy remedy for every wrong recognized by law as being remediable in a court. The term "injury," as therein used, means such an injury as the law recognizes or declares to be actionable. Many of the state Constitutions contain similar provisions, and the courts, including our own, have held, either expressly or impliedly, that their meaning is that above stated. (Citing cases.) If the contention of counsel should be upheld, the consequence would be that the Legislature would be stripped of all power to alter or repeal any portion of the common law relating to accidental injuries or the death of one person by the negligence of another.' " In De May vs. Liberty Foundry Co., 327 Mo. 495, 37 S. W. 2d 640, 645, the court, considering a similar constitutional provision, stated as follows: "Section 10, Article 2, of our State Constitution is borrowed from Magna Charta, and is merely declarative of the right conferred by that ancient yet memorable document, and therein expressed by the simple

clause: 'We will sell to no man, we will not deny or defer to any man, either justice or right.' 12 C. J. 1287. This section of the organic law of our state has been construed and defined by this court to mean 'only that for such wrongs as are recognized by the law of the land, the courts shall be open and afford a remedy.' Landis vs. Campbell, 79 Mo. 433, 439, 49 Am. Rep. 239." Strange as it may seem, even the Supreme Court of Florida recognized that to be the rule in 1939 in the decision of Kirkpatrick vs. Parker, 136 Fla. 689, 187 So. 620, 121 A. L. R. 1481. In that case, the court had under consideration the tort of seduction of an adult woman, the common law of which had not been changed in Florida. Speaking of the constitutional provision here in controversy the court said: "Section 4 of the Declaration of Rights of the Florida constitution merely requires the courts of the State to be open for the administration of right and justice by due course of law, and does not create new causes of action, though it does not prohibit the creation of new causes of action by due course of law." It would seem that this holding of the Florida Court is in contradiction of the holding of the majority in Waller vs. First Savings and Trust Co., supra, but conforms to the minority opinion therein. In the case of McLellan vs. Automobile Ins. Co., 80 Fed. 2d 344 (1935) counsel for plaintiffs, in claiming that a cause of action for wrongful death survived the death of the tortfeasor, relied upon Article 18, Section 6, of the Arizona Constitution, reading as follows: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." It may be noted that this constitutional provision partly bears a resemblance to Section 8 of Article 1 of our own Constitution. But the court in the foregoing case stated: "it is difficult to understand why the appellant invokes the constitutional provision

quoted above; for that provision protects only 'the right of action to recover damages for injuries' as it was recognized by the common law. This was definitely held by the Supreme Court of Arizona, in Alabam's Freight Co. vs. Hunt, 29 Ariz. 419, 443, 242 P. 658, 665."

In view of this great array of authorities, we would hardly be warranted in adopting the Nebraska and Florida rule first above mentioned and thus overrule Tuttle vs. Short, 42 Wyo. 1, 288 P. 524, 70 A. L. R. 106. We are situated somewhat like the Supreme Court of Washington in the case of Compton vs. Evans, supra, where the court after referring to the Florida and Nebraska cases above mentioned, stated as follows: "It was, perhaps, open to this court, in its earliest cases touching the matter, to refuse to follow the ancient rule in whole or in part, upon the ground that it was 'incompatible with the institutions and conditions of society in this state.' Rem. Rev. Stat., Sec. 143. It held, however, that the rule, as it existed in England at the date of the Declaration of Independence, became a part of the common law of the state. Our legislature has from time to time passed statutes dealing with certain phases of the matter; and if further changes are necessary and desirable, they must be made by that department of the state government."

(b)    Counsel for appellant insist that in Section 4, Article 9, of the Constitution of this state, it is contemplated that an action may be brought against the representatives of the tortfeasor after the latter's death. Section 4 is part of an article dealing with mines and mining and the first part of that section has no bearing herein. The section is as follows: "For any injury to person or property caused by wilful failure to comply with the provisions of this article, or laws passed in pursuance hereof, a right of action shall ac-

crue to the party injured, for the damage sustained thereby, and in all cases in this state, whenever the death of a person shall be caused by wrongful act, neglect or default, such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages *notwithstanding the death of the person injured,* and the legislature shall provide by law at its first session for the manner in which the right of action in respect thereto shall be enforced." The legislature enacted no law in compliance with the last clause of the constitutional provision, for the reason that that had already been done by a statutory provision of 1876, now contained in Section 3-403, Wyo. Comp. St. 1945. It reads as follows: "Whenever the death of a person shall be caused by wrongful act, neglect or default and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter." It may be noted that the section of the Constitution above mentioned, except the first part, is almost an exact copy of the section of the statute above mentioned. The statute is patterned after what is commonly known as Lord Campbell's Act passed in 1846. The statute was considered at some length in Tuttle vs. Short, supra, and it was there held that an action against the representatives of the wrongdoer was not permitted thereunder. And in the absence of a statutory provision to the con-

trary, that is the overwhelming weight of the authorities. It is said in 25 C. J. S. 1135, speaking of the statute here in question, that: "In the absence of a statute expressly so providing, the right of action for death by wrongful act does not survive the death of the wrongdoer." In Kranz vs. Wisconsin Trust Co., 155 Wis. 40, 143 N. W. 1049, it was said: "And in this connection it should be observed that there is a vital difference between the survival of a cause of action upon the death of the injured party and a survival of liability upon the death of the wrongdoer. A statute may provide for the one and not for the other." In Hegerich vs. Keddie, 99 N. Y. 258, 1 N. E. 787, the court, speaking of a statute above in question, stated: "It will be observed, also, that the statute, although creating a new cause of action, and passed for the express purpose of changing the rule of the common law in respect to the survivability of actions, and conferring a right upon representatives which they did not before possess, does not undertake, either expressly or impliedly, to impair the equally stringent rule which precluded the maintenance of such actions against the representatives of the offending party." In the later case of Meekin vs. Brooklyn Heights R. Co., 164 N. Y. 145, 152, 58 N. E. 50, 51 L. R. A. 235, the court stated: "In Hegerich vs. Keddie, (99 N. Y. 258), is was held that the cause of action for damages from negligence resulting in death abates upon the death of the wrongdoer, and that an action cannot be maintained against his representatives. This is a necessary result from the fact that the Code modifies the Revised Statutes and the common law only as to the personal representatives of the person injured, and not as to those of the person who inflicted the injury." See also to the same effect, 1 Am. Jurisprudence 97, Section 141, Tiffany, Death by Wrongful Act, (2d Ed.), Sec. 119, and numerous cases there cited, Annotations in 78 A. L. R. 600

and 112 A .L. R. 343, 171 A. L. R. 1392. We can see no good reason for giving the constitutional provision any different meaning than is given to the statute, since the reading of these provisions are practically the same. It may be noted that in Section 4, supra, it is provided that the action there mentioned shall be maintainable *notwithstanding the death of the person injured.* If the intention had been that it should be maintainable also notwithstanding the death of the tortfeasor, it would have been easy to have inserted a provision to that effect. We think the framers of the Constitution were aware of the difference between the survival of a cause of action upon the death of the injured party and a survival of liability upon the death of the wrongdoer, and in view of the Constitution, making the action maintainable notwithstanding the death of the person injured without making it maintainable notwithstanding of the death of the tortfeasor, would seem to be additional and almost conclusive evidence of the fact, that Section 8, of Article 1. of our Constitution, heretofore considered, bears no such meaning as contended for herein by counsel for appellants.

## II.   SURVIVABILITY AND ABATEMENT OF PENDING ACTION.

Counsel for appellants claim that we have heretofore overlooked, and should take into consideration, the provisions of Section 3-2301, relating to abatement of actions by death, and providing as follows: "Except as otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto except an action for libel, slander, malicious prosecution, assault, or assault and battery, for a nuisance or against a justice of the peace for misconduct in office, which shall abate by the death of either party."

An annotation on such a statute is found in 92 A. L. R. 959. In order to determine its meaning, it must be borne in mind that abatement of a pending action and survivability of an action are two different matters. 1 Am. Jurisprudence 68. At common law, every pending action, abated, as a matter of procedure, by the death of a plaintiff or a defendant, whether it survived or not. If it survived, a new action might be brought by the representative of the deceased; if it did not survive, no such new action could be brought. 1 Am. Jurisprudence 59. It was, of course, advisable as a procedural matter to avoid the necessity of having to bring a new action is case of death of a party, and statutes to that effect have been enacted probably in all jurisdictions. But whether or not such statutes at the same time effect survival of an action—after the suit is pending—is another matter. Counsel for appellants argue that to permit a survival of an action like that a bar after the action is commenced, but not to permit it before the commencement of such action, would be "a result satisfactory to no one but ambulance chasers." That is a strong and rather persuasive argument that such a statute does not perhaps contemplate survival of an action ex delicto except in cases in which, by another statute, such survival is permitted. That was the holding in one of the earliest cases on the subject, namely, Baltimore and Ohio Railroad Co. vs. Ritchie, 31 Md. 191. It is the holding, under an identical statute like ours, in Ohio and Oklahoma. Chilcote, Guardian vs. Hoffman, 97 Ohio St. 98, 119 N. E. 364, and State ex rel. vs. City of Shawnee, 167 Okla. 582, 31 P. 2d 552. In the Ohio case—which, however, did not involve an action ex delicto, the court, commenting on the statute here involved, stated: "The purpose of this section of our Code is to prevent the useless annoyance, delay, cost, and expense of bringing a new action where the cause of action survives. Certainly

it was not the legislative intent that a pending action should not abate by the death of a party, where the cause of action does not survive his death. Such a construction would render the statute ridiculous. A pending action cannot survive the cause of action upon which the action itself is predicated." But other cases do not so limit such or a similar statute. 1 Am. Jurisprudence 68, 69. However, that may be, if the statute in question were to be construed as including a provision for survival of an action in tort, it would be such in a very limited sense, namely, one applicable when an action had been instituted during the life of the tortfeasor. It is expressly limited to pending actions and could not very well be construed as referring to actions which had not yet been commenced. Thus it is said in 1 Am. Jurisprudence on page 69 : "It seems clear that whatever may be the view of the effect of such a statute upon a cause of action where there is an action pending at the death of one of the parties such a statute cannot be construed to be a revival statute where no such action is pending and so the cases hold." See also 1 C. J. S. 172, note 62. We find no cases to the contrary. Thus it is said, for instance, in Wright vs. Smith, 136 Kan. 205, 14 P. 2d 640, in which the court, holding that a cause of action instituted after the tortfeasor's death did not survive, said in passing, that: "It might very well be that, if Armstrong (the tortfeasor) had lived long enough to have been sued for the wrongful death of Wright and had then died, such action could have been revived against Armstrong's administrator under the precise letter and purpose" (of the statute identical with ours). To that effect, also see McClure vs. Johnson, 50 Ariz. 76, 69 P. 2d 573, and the cases cited in the annotation in 92 A. L. R. on page 960. Since the claimed tortfeasor in this case died before the actions in the cases at bar were insti-

tuted, the foregoing section of the statute can have no bearing herein.

## III.   LOSS OF SERVICES, ETC.

Counsel for appellant, in their reply brief, claim that Laughlin, as administrator, should be able to recover for the pecuniary losses suffered by the surviving family of Martha L. Mull, such as the loss of her services. They cite Section 3-402, Wyo. Comp. St. 1945, reading as follows: "In addition to the causes of action which survive at common law, causes of action for mesne profits or for an injury to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same." Counsel claim that the loss of services is an injury to the personal estate of the deceased within the meaning of the statute. The direct contrary has been held under a statute exactly like ours in the case of Ickes vs. Brimhall, 42 N. Mex. 412, 79 P. 2d 942, and Wright vs. Smith, 136 Kan. 205, 14 P. 2d 640, and see McFadden vs. Rankin, 46 R. I. 475, 129 A. 267. In the late case of Mennemeyer vs. Hart, (Mo.), 221 S. W. 2d 960 (1949), it was held: "The loss of services caused by the wrongful killing of a minor child is a wrong done to personal rights of a parent and not to his property, and, hence, an action for wrongful death of such child cannot survive death of wrongdoer under statute providing for survivorship of causes of action for an invasion of property rights." In 1 C. J. S. 192, it is said: "In most jurisdictions statutes providing for the survival of causes of action for injuries to personal property are deemed applicable to, and only to, a cause of action for direct physical injury to specific, tangible property." In 1 Am. Jurisprudence 75, Sec. 93, it is stated: "One class of actions which is commonly dealt with in survival statutes and made to survive com-

prises causes of action for injuries to the real or personal estate. A statute providing that actions for damages done to personal estate shall survive does not apply to the mere impoverishing of a man's estate generally, but requires that damage to some specific property should be alleged and proved. An 'injury to the real or personal estate,' as the expression is used in such a statute, does not include causes of action for injuries to persons, for in using the phrase, 'injury to the real or personal estate,' the legislature will be presumed to have used it in its well-established sense, as distinguishing torts to property from injuries to persons." The foregoing contention must accordingly be overruled.

## IV.   CHANGES OF CONDITIONS.

It is apparent from what has already been said that no legal ground—strictly so called in any event—exists why we should overrule Tuttle vs. Short, supra. But counsel for appellant have made an eloquent argument to the court that on account of changed conditions and the injustice of the common law rule here in question, we should repudiate that rule, at least in cases in which the tortfeasor carried automobile liability or indemnity insurance. No case has been cited in which the existence of such insurance has been held to make any difference in the applicability of the rule of law here involved. In Wiechmann vs. Huber, 211 Wis. 333, 248 N. W. 112, and Haines vs. Harrison, 357 Mo. 956, 211 S. W. 2d 489, it was held that when a tortfeasor is dead, no action is maintainable for wrongful death caused by him either against his administrator or an insurance company which had insured him by an automobile indemnity insurance policy. See also Ritter vs. California Highway Indemnity Exchange, 214 Cal. 791, 4 P. 2d 145, and Severns vs. California Highway Indemnity Exchange, 100 Cal. App. 384, 280 P. 213.

Attention is called to the writer's opinion in McKinney vs. McKinney, 59 Wyo. 204, 135 P. 2d 940, involving an action by a wife against the husband for damages arising out of an automobile accident. That opinion was fortified—or at least as the writer then thought —by decisions of other courts. To extend what was there said to a situation such as presented in this case in which a different rule of the common law is involved, and do so without the support of any authorities, is another matter. What is more important is the fact that we should have to go one step further in this case than would have been necessary in the McKinney case, namely, repudiate and overrule a decision of this court rendered comparatively recently. See Kyle vs. Kyle, 210 Minn. 204, 297 N. W. 744, in which the court was similarly situated. For a court to refuse to follow a rule of the common law in the first instance, is one thing; to repudiate it after once having recognized its validity is another; and the more recent the recognition of the rule, the more questionable must be the wisdom of subsequent repudiation and the more delicate becomes the balance between the right and the wrong of such a course.

Counsel say that in 1946, much more insurance was carried by automobile owners than was true in 1927 or 1930. That may be true, but a lot of insurance was carried at the latter dates and the change would not be sufficiently great to warrant this court in changing its position on the ground mentioned. Again, while we do not know it as a fact, and appellants deny it, contracts of insurance were from 1930 to 1947, presumably written in the light of the decision in Tuttle vs. Short, supra, just as all contracts are presumably written in the light of existing law, so that we are not at all sure of the truth of the assertion of appellants that to overrule our former decision would hurt no one.

We are here dealing with a contention that we should by judicial fiat repudiate a rule of the common law of no mean importance. That rule is hoary with age. It was laid down by Bracton, one of the main founders of the common law in the thirteenth century, trice stating in substance that it would be an injustice to penalize the heirs of a tortfeasor for a wrong not committed by them. 29 Columbia Law Rev., page 240. That injustice must have appeared as axiomatic for many generations, for the rule has for at least seven centuries clung to the body of our law with a remarkable tenacity, equaled by few other rules, and even as late as August of this year, as has been seen, was pronounced as an existing rule of law by a respectable court, as was also done, by a number of other courts during the last ten to fifteen years. See annotation 171 A. L. R. 1392. And what makes the rule more remarkable is the fact that it also existed in an older civilization. Gaius (4, 112), in the second century of our era, in the heyday of Roman civilization, announced that it was an unquestionable and absolute rule of law. Three and a half centuries later, Justinian repeated that statement, Institutes 4, 12, 1. So that we are here asked to repudiate a rule by judicial fiat which persisted in two civilizations, each perhaps partially crude, each partially enlightened, for, say, a millenium and a half or longer, and to do so after we, following the pronouncement of most of the courts, laid it down as a governing rule of law in this state.

We think that we should shut our ears to the siren voices of counsel for appellants. We have already seen what the Washington Supreme Court thought of a situation such as that with which we are here confronted. In Rhode Island, the Supreme Court had held as we did in Tuttle vs. Short, supra, that an action for wrongful death did not survive the death of the tortfeasor. The question again arose in that state in McFadden vs.

Rankin, 46 R. I. 475, 129 A. 267. It was argued that the former holding was unjust and illogical and the court was asked to overrule its former decision. But the court said: "Assuming that the law at present is incomplete as to remedy and lacking in consistency, relief must be sought from the legislature and not from the courts." In Ickes vs. Brimhall, supra, the Supreme Court of New Mexico in 1938 thought that to repudiate the common law rule here in question would be judicial legislation. Many other courts concur. Only a little over a year ago, in the case of Wilson vs. City of Laramie (Wyo.), 199 P. 2d 119, we refused to repudiate a rule of the common law of no greater importance than the rule in question in this case, and we said in part: "While change and stability in the law are forces forever contending with each other, stability in the holdings is expected, if not required, of the courts. Changes made by them from time to time in the law are not surprising only if made merely interstitially. Hence, we naturally hesitate to make a radical change, on our own motion, in the rule of the common law applicable herein, howsoever much we may dislike the rule. To do otherwise would, we fear, go beyond our judicial prerogative."

And finally we should add this: In 1947, as we have seen, the legislature changed the rule of the common law here involved. Quite a few of the arguments of counsel for appellants—for instance that relating to present day public policy—are apropos the wisdom and advisability of that legislation, but are hardly sufficiently persuasive to cause us to abandon the judicial path and enter that of legislation, particularly since the legislature by its action has definitely and indelibly stamped the duty or wisdom of changing the common law rule in question as legislative, and for us to say now that it is judicial would make the action of the legislature appear as an idle ceremony, and

show, in a situation such as confronts us, but scant respect for the intelligence of that department of our government, no matter what the pressure group, which counsel say was behind the legislation, may have had in mind. Counsel contend or suggest that the legislature may have merely meant to clarify the law. A statute perhaps might do that, just as particular statutes have been construed as but declaratory of the common law. But it is impossible to hold that to be true in this case. No court has ever suggested that the rule of the common law was different than we stated it to be, and held to be the law of this state, in Tuttle vs. Short, supra. The change made by the legislature was, real, vital and in fact radical. Counsel say that the legislature has made it easy by its action for this court to say now that the law in 1946 in fact was as it was changed by that body in 1947. We do not see any force in that argument. We have found no precedent, and none has been cited, where a court has conformed its decision to a legislative change, in a case arising prior thereto, and which, as is true in the case at bar, is governed by a radically different law in force previous to such change. To do so would perhaps create causes of action, unless barred by a statute of limitation, not heretofore thought to exist by reason of Tuttle vs. Short, supra, or if the benefit would be limited to this case alone, would smack of favoritism toward the plaintiff, and of that no court should be guilty.

We think that the judgment of the court should be affirmed, and it is so ordered.

RINER, C. J., and KIMBALL, J., concur.