[No. 29934-4-I.   Division One.   June 21, 1993.]

G.W. CONSTRUCTION CORPORATION, *Respondent,* v.
PROFESSIONAL SERVICE INDUSTRIES,
INC., *Appellant.*

---

*James H. Jordan, Beth M. Andrus,* and *Miller, Nash, Wiener, Hager & Carlsen,* for appellant.

*Paul S. Ritchie,* for respondent.

BAKER, J. — Professional Service Industries (PSI) appeals a judgment based upon the trial court's determination that PSI breached its contract with G.W. Construction Corporation (G.W.). We hold that G.W.'s complaint sounded in tort, not contract, and the statute of limitations has therefore run. Accordingly, we reverse.

## FACTS

In 1984 Adolf Sanft began constructing a small warehouse/office building. He hired Hudson and Associates (Hudson) to design the building, prepare the structural plans and specifications and perform on-site inspections during construction. The plans included poured concrete panels which

would be tilted up to form the building's walls. Steel rein- forcing bars (rebar) were to be placed within the panels no less that 1½ inches from the panels' outside surfaces and no less that three-fourths of an inch from the inside faces.

G.W. Construction was hired to fabricate and erect the tilt-up panels. G.W. hired PSI's predecessor entity to perform certified inspections to ensure the concrete castings complied with the plans and specifications.[1] The purchase order from G.W. to PSI states only that PSI is to "provide required rebar inspection and cylinder testing". The inspection standards are governed by the Uniform Building Code (UBC), which requires that a special inspector:

> 1. . . . observe the work assigned to be certain it conforms to the design drawings and specifications.
>
> . . . .
>
> 3. . . . submit a final signed report stating whether the work requiring special inspection was, to the best of his knowledge, in conformance with the approved plans and specifications and the applicable workmanship provision of this code.

UBC § 306(12)(c) (1982).

PSI inspected G.W.'s rebar placement. Its written report indicates the rebar was inspected in one-half of the panels, as requested, and "found all to be in accordance with approved drawings".

Following the first inspections and concrete pour, Sanft noticed some cracks in the drying wall panels. He asked G.W. about the cause of the cracking. G.W. in turn asked Hudson to look at them. Sanft told G.W. and the Hudson representative that he thought the rebar in the south wall was too close to the surface. G.W. employees then lowered the rebar in certain unpoured panels by standing on it and striking it with a sledgehammer.

The City of Tukwila inspected and approved the remaining panels, as per the requirements of the UBC. After Hudson's second visit and the City's second inspection, PSI inspected and approved the remaining panels. During trial,

---

[1] Since PSI is liable for the acts and omissions of its predecessor, we will refer to both entities as PSI in this opinion.

neither PSI inspector was able to remember exactly what procedure was followed in their inspections. The total bill to G.W. for 2 days of PSI's professional services was $367.80.

About 1 month after the building was erected, Sanft again noticed gridlike horizontal and vertical cracks on the walls of the building. The "problems became apparent with the panels when they were lifted into place, including the panels on the west, north and east sides." In November 1984 Sanft met with a Hudson representative to perform a building inspection and to discuss discrepancies between the contract documents and the as-built condition. In a November 1984 letter, Hudson notified Sanft that it had been aware, since PSI's first inspection, that the rebar in panels 21 through 23 had only a three-fourths-inch clearance from the outside wall, rather that 1½ inches as specified by the plans.

In January 1985 G.W. filed a lawsuit against Sanft because it had not been paid in full for its work. Sanft answered and counterclaimed that G.W. had breached its agreement by "failure to complete the construction . . . in conformity with the . . . plans [including] . . . failure to locate reinforcing bars as required within wall slabs".

Sanft hired a consulting engineer to inspect the building. In July 1987 the engineer made an initial inspection. He noticed the cracks in the walls, and testified that "we should not be seeing that cracking if it [the rebar] was in the center of the wall". In January 1988 with the use of a magnetic testing device called a pathometer, the engineer confirmed that the rebar in the north, east, and west walls had been misplaced. His final report stated this rebar was three-fourths of an inch from the outside face and 1½ inches from the interior face, exactly the reverse of what was required.

The trial court found for Sanft on its counterclaim. G.W. then brought this suit against PSI, alleging that PSI failed to detect the misplaced rebar. In the complaint, G.W. alleged both breach of contract and negligence.

PSI unsuccessfully moved for summary judgment, claiming that G.W.'s complaint sounded only in tort, not in con-

tract, and the statute of limitations had expired. After further discovery, PSI renewed its summary judgment motion on the statute of limitations issue. Again, its motion was denied.

After a bench trial, the trial court found in favor of G.W. and entered findings of fact, conclusions of law and a judgment against PSI.

I

■ We first decide whether this action sounds in contract or in tort. Whether an action sounds in tort or in contract is determined from the pleadings and the evidence relied on. *Thao v. Control Data Corp.*, 57 Wn. App. 802, 790 P.2d 1239 (1990). An action sounds in contract when the act complained of is a breach of a specific term of the contract, without reference to the legal duties imposed by law on that relationship. *Yeager v. Dunnavan*, 26 Wn.2d 559, 562, 174 P.2d 755 (1946).

In *Yeager* plaintiffs' child died of an allergic reaction to ether while undergoing surgery to correct a minor eye defect. The plaintiffs alleged breach of the physician's agreement to correct their child's eyesight without injury to her health, and general negligence. The court found that the contract was merely a preliminary matter which created a legal duty of reasonable care. It was the tortious breach of that duty, rather than the breach of a contract, which gave rise to the cause of action.

> [W]here there is a contract for services which places the parties in such a relation to each other that, in attempting to perform the promised service, a duty imposed by law as a result of the contractual relationship between the parties is violated through an act which incidentally prevents the performance of the contract, then the gravamen of the action is a breach of the legal duty, and not of the contract itself[.]

(Italics omitted.) *Yeager*, 26 Wn.2d at 562 (citing *Compton v. Evans*, 200 Wash. 125, 93 P.2d 341 (1939)).

The plaintiff in *Compton* was a household servant who was injured while being transported by her employer between the employer's two residences. The complaint alleged that her

injuries resulted from a breach of the contract to transport her safely. *Compton*, 200 Wash. at 126. The court found that the contract did include a duty to transport the plaintiff, but refused to read into the agreement as a contractual undertaking the duty of care to transport plaintiff safely.

> In this case, the substance of the action is the elaborately alleged negligence of [the defendant], the breach of her legal duty to use due care in performing the contract with plaintiff, a duty which . . . existed independent of contract.
>
> . . . .
>
> In our opinion, this action is founded on tort.

*Compton*, 200 Wash. at 136-37.

G.W.'s complaint alleges breach of contract in the first claim for relief and negligent inspection or supervision of construction in the second. The breach of contract claim alleges "[PSI] performed under the contract by sending duly authorized employees and agents to the job site to perform inspections, make laboratory tests and report results." It continues: "Under the contract formed between GW and [PSI], [PSI] owed a duty to GW to use reasonable care in performance of the contract."

The trial court found that PSI's representations that it had "found all to be in accordance with approved drawings" and "minor corrections were made to clearances" indicated that the scope of PSI's contractual undertaking was first to take exact measurements, and second to check these measurements against the plans. The court found that PSI failed to take measurements and thus breached the contract. Based on that reasoning, the court held the complaint sounded in contract. We disagree.

The contract does not specify that measurements are to be made, but states that PSI is to perform the "required" rebar inspections. The "requirements" referred to are spelled out in the UBC. The UBC specifies that the inspector must "observe the work assigned to be certain it conforms to the design drawings and specifications". UBC § 306(12)(c)(1). The terms of the UBC are incorporated by reference into the contract between PSI and G.W. Therefore, observation and

certification of conformance to the plans, to the best of the inspector's knowledge, are terms of the contract.

In the performance of its contractual obligation, PSI had the duty to exercise reasonable engineering skill and judgment. It may be true that in order to exercise that care, PSI's inspectors needed to take exact measurements of the placement of the rebar. It does not necessarily follow, however, that each act required of a professional engineer utilizing reasonable engineering skill in the performance of a contract ipso facto constitutes a specific contractual undertaking. A failure to perform the inspections which PSI agreed contractually to perform would be a breach of contract. A failure to exercise the necessary degree of professional engineering care in doing so would not, unless the omission violated a specific contractual undertaking.

By analogy, an attorney who agrees to draft a will for a client breaches a contract with the client by failing to do so. However, if the attorney drafts the will and negligently omits having its execution properly witnessed, the attorney would be liable in tort for professional malpractice. No breach of contract action would lie even though the will would not be valid if its execution were not witnessed.

■ PSI contracted to observe and certify that to the best of the inspector's knowledge the rebar placement met the plans and specifications. The evidence shows that two PSI inspectors visited the site, observed the rebar, and certified that to the best of their knowledge it met the specifications. In fact, the rebar was misplaced, but the inspectors' failure to determine that was not a breach of a specific term of their contract. Rather, it was a breach of their duty to use reasonable care in the performance of their contract, or negligence. G.W.'s claim sounds in tort, not contract.

## II

■ Because this lawsuit sounds only in tort, the tort statute of limitations applies. Under RCW 4.16.080, a plaintiff

must commence a lawsuit within 3 years from the date its cause of action accrues. It accrues when a claimant knows, or in the exercise of due diligence should have known, all the essential elements of the cause of action, specifically duty, breach, causation, and damages. *In re Estates of Hibbard,* 118 Wn.2d 737, 752, 826 P.2d 690 (1992). The burden is on the plaintiff to show that the facts constituting the tort were not discovered or could not have been discovered by due diligence within the 3-year period. *Interlake Porsche + Audi, Inc. v. Bucholz,* 45 Wn. App. 502, 518, 728 P.2d 597 (1986), *review denied,* 107 Wn.2d 1022 (1987).

The trial court concluded that

the plaintiff did not know and could not reasonably have known that all or substantially all of the rebar was incorrectly located in the north, east and west walls before [the consulting engineer] had taken out the pachometer and checked at the site.

The engineer's initial inspection took place in July 1987. The pachometer test took place in January 1988, and the lawsuit was commenced on August 31, 1990, less than 3 years later.

However, Hudson's letter of November 1984 indicates that Hudson knew then that the rebar was misplaced. Sanft testified that he noticed gridlike cracks in the walls within 1 month of the building's construction. In August 1985 Sanft filed his counterclaim in G.W. Construction Corp. v. Sanft, King Cy. cause 85-2-00968-1 (June 14, 1989), alleging that G.W.'s agents failed to locate reinforcing bars as required within the wall slabs. The consulting engineer testified that "we should not be seeing that cracking if [the rebar] was [correctly located] in the center of the wall." All of these facts should have put G.W. on notice more than 3 years before commencement of this suit that the rebar was misplaced. Substantial evidence does not support the finding that G.W. could not have known by the exercise of reasonable diligence prior to January 1988 that the rebar was misplaced. The statute of limitations has run on G.W.'s claim.

Reversed.

FORREST and AGID, JJ., concur.

Review denied at 123 Wn.2d 1002 (1994).